H. M. [TINKER] BOYD v. THE STATE.

No. 8808.   Delivered March 18, 1925.

Rehearing denied May 6, 1925.

1.—Murder—Charge of Court—On Circumstantial Evidence—Properly Refused.

Where the defendant admitted or confessed to having killed the deceased, this evidence is direct, and not circumstantial, and a charge on circumstantial evidence is not required. See Branch's Ann. P. C., Sec. 1874. Where it is only by a process of inference from the confession or admission that it can be determined that defendant did the killing, or was a guilty participant, the charge should be given. See opinion for collation of authorities.

2.—Same—Circumstantial Evidence—Continued.

After the death of deceased, and before the discovery of her body the appellant replied to a question asked him by one Boyd, if deceased had asked for a certain deed, that "She didn't need anything but a grave yard." After the discovery of the body of deceased, Sam Boyd asked appellant of he had seen two brothers of deceased, to which he replied that he had his pistol and might have to kill some more folks, and "I killed that G-d d-n woman, and you keep your mouth shut about it." Under these facts a charge on circumstantial evidence was not required. Following Holt v. State, 9 Tex. Crim. App. 582 and other cases cited.

3.—Same—Charge of Court—Error—When Not Reversible.

Where an error of omission in the charge of the court is not calculated to injure the rights of the appellant, this court is inhibited by Art. 743 of our C. C. P. to order a reversal of the judgment because of the supposed omission in the charge.

**4.—Same—Evidence—Cross-Examination.**

Where appellant introduced a witness who testified that a few days before the Sunday upon which the body of deceased was found, witness saw appellant, and observed in his actions no departure from what was usual, it was proper for the state on cross-examination to enquire of said witness, and permit him to describe appellant's condition after the body was found, and that he seemed to be "tore up" in his mind after the investigation started. See Underhill on Crim. Ev., 3d Sec. 200. Following Hart v. State, 15 Tex. C. A. 202, 49 Am. Rep., 188.

ON REHEARING.

**5.—Same—Charge of Court—Circumstantial Evidence.**

Where, on a trial for murder, the allegation and proof, is of a death by means unknown, this situation does not of itself necessitate a charge on circumstantial evidence. Eyewitnesses might witness a killing, and yet not be able to testify as to the weapon used, nor the exact manner of its use. In this case the issue is not *how* deceased was killed, for there is no question but that she was killed, but *who* killed her. Appellant admitted that he did, and this removed the case from one depending on circumstantial evidence alone.

**6.—Same—Motion for New Trial—No Error Presented.**

Where appellant attached to his motion for a new trial various affidavits, and the state filed a traverse of said motion, and supported same by affidavits, and the order of the court on the motion recited that he heard it, and the evidence thereon at the time it was overruled, and neither by bill of exception, nor statement of facts is the evidence thus submitted brought before us for review, we assume the correctness of the action of the court upon the motion.

Appeal from the District Court of Liberty County. Tried below before the Hon. J. L. Manry, Judge.

Appeal from a conviction of murder, penalty thirty years in the penitentiary.

The opinion states the case.

*E. W. Love,* of Cleveland, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of thirty years.

The deceased, Annie McShan, and her two young children resided upon a place belonging to the appellant which was situated something over a mile from the home of J. M. Burkitt, the father of the deceased. On the 15th day of June, 1922, a boy about fourteen years of age, on passing the premises, observed the two young children in the yard in a neglected condition. He made a report of it to Burkitt, who, upon going to the premises, found the body of the deceased in the house in a state of decomposition indicating that she had been dead for some time.

A number of witnesses testified that the appellant had repeatedly expressed a desire that the deceased should vacate his premises. Some of these imputed to the appellant a very strong language, including profanity and threats to remove her from his premises, if not by one means then by another.

It seems that Sam Boyd had been living in adultry with the deceased and that others, including the appellant, were frequenters of her home. Appellant resided with his family at a village some distance away, and Sam Boyd had his room there.

Three other persons besides the appellant were under suspicion, and Sam Boyd, a brother of the appellant, was tried for the offense and acquitted. He became the principal State's witness against the appellant, although there were others. Some of these testified that the appellant was seen in the vicinity of the place where the homicide took place on the night upon which the deceased was last seen alive by any of the witnesses who testified upon the trial. The means by which the homicide was committed were not definitely shown. However, a loaded pistol was found upon the bed where the body laid; another was found upon the road some distance from the house; and an iron bar, described by the evidence, was also found. Circumstances led to the view that a wound had been inflicted upon the deceased in the kitchen of the house, though her body was found upon the bed in a different room. Other circumstances, including articles of wearing apparel, which some of the witnesses claimed belonged to the appellant, were introduced in evidence. Alleged declarations of the appellant after the discovery of the body of the deceased were introduced.

Mrs. McIlvain testified that a short time before the homicide, she heard the appellant say to his wife: "* * * I will get her off of there if I have to kill her and drag her off there." She also testified that just after he was released from jail, he asked her did she know anything that was good for him. She replied: "Not a thing in the world." He said he did not know he killed her. He said he just intended to give her a light lick and hit her too hard. He also said: "I begged Sam like a dog not to kill her." He did not mention the name of the deceased in this conversation. The witness said:

"I do not know of my own knowledge how Annie McShan met her death. I just know what he told me; that's all I know."

Sam Boyd testified that he had been living at the home of the appellant but that he treated the deceased as his common-law wife and that he was the father of her youngest child and often visited her. She moved on the premises of the appellant with his consent. He was there on Thursday night before the discovery of the dead

body on the following Sunday. After visiting the deceased, he (Sam Boyd) went to the barn to investigate a noise there. Returning to the house he observed the appellant and the deceased together at the door of the house, appellant having hold of the deceased. The witness did not disclose his presence but went away. The witness testified that on the following day in a conversation about the deceased, appellant said that she "needed nothing but a graveyard", and that on Monday after the body of the deceased was discovered, appellant said to the witness that he "had killed that d—n woman." The circumstances attending this conversation are set out in more detail in a subsequent part of this opinion.

Appellant insists that the case is one of circumstantial evidence alone and that in refusing to so instruct the jury and to inform them of the rules pertaining to that class of evidence there was error committed. It is the contention of the State, however; that the declarations imputed to the appellant amount to a confession such as would take the case out of the domain of circumstantial evidence. Deduced from the many authorities cited, the rule is thus stated by Mr. Branch in his Ann. Tex. P. C., Sec. 1874, subdivision 2:

"Proof that defendant admitted or confessed to having killed the deceased is direct and not circumstantial evidence of the main inculpatory fact, and a charge on circumstantial evidence is not required when proof of such admission or confession is not evidence."

See Heard v. State, 24 Texas Crim. App. 111, and numerous other cases.

"If it is only by a process of inference from the confession or admission that it can be determined that defendant did the killing or was a guilty participant therein, the court in a murder case should charge the jury as to the rules of law governing circumstantial evidence." (Branch's Ann. Tex. P. C., Sec. 1873, subdivision 2.)

A confession is defined in Wharton's Crim. Ev., Vol. 2, Sec. 622, thus:

"A confession, as applied to criminal law, is a statement by a person, made at any time afterwards, that he committed or participated in the commission of a crime."

See Wigmore on Evidence, Vol. 1, Sec. 821. The admission of subordinate facts not constituting guilt is not a confession. See Wharton's Crim. Ev., Vol. 2, Sec. 622b; Wigmore on Ev., Vol. 1, Sec. 821, subdivision 3. The admission of subordinate facts from which the inference of guilt might be deduced is not a confession which will absolve the court from instructing the jury upon the law of circumstantial evidence. Wharton's Crim. Ev., Vol. 2, Sec. 622b, subdivision 3.

Appellant cites Eckert v. State, 9 Texas Crim. App. 103; Conner v. State, 17 Texas Crim. App. 15; Trijo v. State, 45 Texas Crim. Rep. 127.

From Eckert's case, *supra,* we quote the comments of this 'Court on the theory of the State:

"The appellant, on the night before the assault, lost a sorrel horse. On ascertaining his lost, on the next morning, he followed the trail in pursuit of the thief, and upon coming in view and range of the supposed thief, he shot at him. Kloepper, the injured party, was on that morning riding a sorrel horse, and was shot by some unknown person; therefore the appellant must have been the person who shot Kloepper. There is nothing in the record which establishes that the appellant shot at the supposed thief in the same locality in which Kloepper was shot."

In Connor's case, *supra,* Fed. and Charles Connor were on trial. The persons killed were Eli Lowe and Kit Smith. There were circumstances pointing to the appellants and Willis Conner and William Conner as the offenders. To take the case out of the category of circumstantial evidence, the State relied upon the declarations, not of the accused Fed. and Charles Conner, but of Willis and William Conner. The declarations imputed to Willis Conner were these: He was asked by his wife: "Did you do what you went to do?" Willis replied: "Yes, * * * I did. His wife then asked: "Are you sure they are dead?" Willis replied: "Yes, * * * they are, and they won't steal any more of my hogs, nor dog any more of my stock."

The statement imputed to William Conner was:

"I guess the d—d son of a b—h won't curse me any more. I took two pops at him with John's Smith & Wesson pistol, and she is as good as Mollie ever rubbed her leg over."

Willis Conner also said:

"Eli begged mightily, but he was just a year too late. It didn't do any good. He had no business bothering my stock. He had warning not to go into my stock range."

At the time the declarations were made, Fed. Conner, according to the evidence, was some distance away engaged in a conversation with John Conner. Charles Conner took no part in the declarations and was by no direct testimony shown to have heard them. The court declined to sanction the State's contention that the remarks or declarations of Willis and William Conner, made under the circumstances reflected by the record, amounted to direct evidence that Charles and Fed. Conner had been participants in the murder.

In Trijo's case, *supra,* according to the witness Celestina Aguiler, the deceased and appellant were in her room. The appellant was

angry. Trijo left, saying to the deceased: "You stay,* * *; she has her customers that visit her at night. The deceased finally left and the witness went to sleep, but was aroused by a pistol shot near her window. She got up and observed Trijo near the window. He remarked: Hist, Celestina; be careful not to say that I did it." Upon making this remark he departed. The witness saw no arms in the hands of the appellant. In this case it was said:

"Where an issue in a case is left in doubt by the evidence, that doubt should always be solved in favor of the accused."

However, the case was reversed upon another ground. The declaration of Trijo was ambiguous, and might have meant that he did not fire the shot and wanted the witness to refrain from charging him with it.

According to the State's evidence in the present case, the deceased was occupying the property of the appellant, and he, on several occasions, had made threats of violence to remove her. She was last seen alive on Thursday night by Sam Boyd, and she was in company with the appellant at her home. Her dead body was discovered on the following Sunday morning in a condition indicating that she had been dead for several days. Suspicion was cast upon the appellant, one Bloodworth, Sam Boyd and Burkitt, the father of the deceased. On Friday before the body was discovered, while in a conversation with Sam Boyd, the latter asked if Annie (the deceased) had asked for a certain deed to the land, to which appellant replied that "she didn't need anything but a graveyard." On the following morning after Bloodworth had been arrested and while the appellant was also under surveillance, and after Sam Boyd, Bloodworth and the appellant, in company with the sheriff, had been near the scene of the homicide. Sam Boyd asked the appellant if he had seen Henry and Dewey Burkitt (two brothers of the deceased). In that connection, appellant said that he had his pistol and he might have to kill some more of those folks. He said: "I killed that G—d d—n woman, and you keep your mouth shut about it." Appellant insists that in the words "that woman" he only inferentially referred to the deceased and that consequently the declaration quoted: "I killed that G—d d—n woman' is but a circumstance and not direct evidence in the nature of a confession. It occurs to us, however, that while the question may be a delicate one, taken in connection with the context, the words: "I killed that G—d d—n woman", were susceptible of no interpretation other than that the deceased was meant. The community was astir by reason of the homicide. The appellant and his brother Sam, then on friendly terms, were suspects; and if in fact, the language was used, to say that it did not point to the deceased is to ignore the substance and grasp the

shadow. If, however, in the stricter sense, the language imputed to the appellant is not a direct statement that he killed the deceased, the distinction is one too narrow for practical application, and comes within the purview of the numerous cases announcing that a charge on circumstantial evidence is not necessary when the proven facts are in such close juxtaposition to the main fact as to be equivalent to direct evidence. Holt v. State, 9 Texas Crim. App. 582; Bass v. State, 59 Texas Crim. Rep. 191; Branch's Ann. Tex. P. C., Sec. 1874, subdivision 7.

Appellant on the trial denied that he killed the woman or that he participated in the offense, and presented by his own testimony and by that of others the defense of alibi. He denied the statement imputed to him, both in the threats and the admissions. It was upon these conflicting theories that the jury's mind was centered. If they had failed to believe that appellant made the statement imputed to him by Sam Boyd, there might have been an acquittal. If, however, they believed the statement was made, there would have been no reasonable doubt to what and to whom it referred. In this state of the record, it is believed that the omission to charge upon circumstantial evidence was not calculated to injure the rights of the appellant, and so believing, we are inhibited by Art. 743, C. C. P. to order a reversal of the judgment because of the supposed omission in the charge.

In support of his theory of alibi, appellant introduced the witness Bazzon who testified that on Thursday on the night of which the homicide took place, he and the appellant met at the post-office. The witness had a relative in a hospital in Houston and had received at the post-office a card from his sister. Appellant sought to have the witness read the contents of the writing on the card, his object being, he said, to identify the time of the meeting between himself and the witness. The bill fails to inform us of the contents of the writing and for that reason is incomplete, as we cannot determine its relevancy. To prove any fact other than that the postal was received, it apparently would have been hearsay. At least we so understand the bill. However, there seems to have been no contradiction of the witness who fixed the time as above stated.

In Bill No. 3, there is complaint of the testimony of the witness Sarvis to the effect that while the appellant was working for him a few days before the Sunday upon which the body of the deceased was found, the witness observed in the actions of the appellant no departure from what was usual. State's counsel then asked the witness to describe the appellant's condition after the body was found. The witness replied that he seemed to be "tore up" in his mind after the investigation started but that during that time he

was with the appellant but little.   No. error is perceived.   See
Underhill on Crim. Ev., 3rd Ed., Sec. 200; Hart v. State, 15 Texas
Crim. App. 202, 49 Amer. Rep. 188.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.— The record so abounds in facts showing
not only the death of deceased but that she died from the criminal
agency of another, that we did not deem it necessary, in the original
opinion, to go into that phase of the case to any length.   The pool of
blood in the kitchen in which were strands of black hair like the
hair of deceased, the trail of blood from the kitchen to the bed on
which her body lay, the bruises on her body, the "squshy" temple,
the black and blue neck, the bloody chair, the bent iron pipe, the
bloody hammer, the bloody pants,—all speak so convincingly of a
death caused by violence that we did not suppose any serious con-
tention would be made on proof of the corpus delicti.

So also of our decision on the question of the failure of the court
to charge on circumstantial evidence.   We have often said that if the
facts proven be in such close juxtaposition to the main fact as to be
equivalent to direct testimony, a charge on circumstantial evidence
is not necessary.   Branch's Annotated P. C., p. 1040.   The main fact
in this case is that the accused did the killing.   If then the State has
shown that he did such killing by testimony so strong as to be equally
as clear and convincing as positive testimony on the point, then
there was no need for a charge on circumstantial evidence.   Also,
under all the authorities, if there be his confession of the main fact,
then it was not necessary to give such charge.   What have we here?
A young woman apparently well and strong, living with her two
little children, one three years old, the other six months old, on a
farm belonging to appellant.   He had moved her there and, accord-
ing to the testimony, he had tried in various ways to get her moved
away; had said she had to get off on good terms or bad ones; that
she had to go if he had to go down there, jump on her and throw
her out; had tried to get a witness to gather some of his friends
and run her off the place for him; had been overheard to say to
his wife, "I will get her off if I have to kill her and drag her off."
The woman's body was found on a bed in her house on Sunday,
her half-starved babies crying and crawling around the yard.   The
body's condition has been referred to.   Her skirt was up and flies
and worms were everywhere in exposed parts of the body.   The fact
of her death became at once noised abroad; her brothers, relatives
and officers began investigating.   Appellant was suspected   Accord-
ing to the testimony he was the last person seen by any witness

with deceased while she was alive. This was on Thursday night before her body was found Sunday. He was at her house where she was killed. Friday after that Thursday appellant, speaking of deceased, said "She don't need anything but a graveyard." The Monday following appellant and his brother were at Cleveland where the brother of deceased lived. The brother of deceased was named Burkitt. Appellant's brother asked him on that day if he had seen the Burkitts. They started down to where the Burkitts were. Appellant asked his brother if he had his pistol and received a negative answer, but further said he had his, and might have to kill some more of those folks, and further said in this connection, "I killed that G—d d—d woman and you keep your mouth shut about it," at the same time putting his hand to his hip pocket. No other woman had recently died in that neighborhood and none had been killed. If these facts be not enough to make clear, with as much force as would have resulted from the statement of an eyewitness that appellant had killed said woman, then we further observe that he was arrested for this killing a few days after the body was discovered, and when he made bond he went down to the home of a woman whom he asked if she knew anything good for him and upon her reply that she did not, he said that he did not know that he killed that woman,—that he just intended to give her a light lick and that he hit her too hard. It would be impossible to conceive any other result from such statements of appellant than that he referred to deceased, and we are confirmed in our belief that to hold these facts not sufficiently strong and not to put appellant in such juxtaposition to the main fact as to obviate the necessity for a charge on circumstantial evidence, would be to grasp at the shadow and neglect the substance.

Appellant's position that when the allegation and proof is of a death by means unknown, there must be necessity be a charge on circumstantial evidence, is manifestly unsound. If A's dead and mutilated body be found clearly evidencing a death by external force, and B admit that he killed A, this would support the conviction of B, although his confession did not name the instrument used and though it be alleged in the indictment that the killing was by some means unknown to the grand jury. Again, A at a distance sees B assault and kill C with some weapon not distinguishable. So that of necessity the means or instrument must be alleged in the indictment and testified to as unknown, but this would not require a charge on circumstantial evidence.

Appellant urges that we did not consider his motion for new trial in which he set up newly discovered evidence. The matter was not brought before us so that we could consider it. Appellant attached

to his motion various affidavits and the State filed a traverse of said motion and supported same by affidavits.   The order of the court on the motion recited that he heard it and the evidence offered thereon at the time it was overruled.   Neither by bill of exceptions nor statement of facts is the evidence thus submitted brought before us for review.   In such case we assume the correctness of the action of the court upon the motion.

Being unable to agree with the contentions made, the motion for rehearing will be overruled.

*Overruled.*