## J. J. Montgomery v. The State.

### No. 1945. Decided October 30, 1912.

### Rehearing denied December 18, 1912.

**1.—Murder—Insanity—Sufficiency of the Evidence.**

Where, upon trial of murder, the defendant relied principally on the plea of insanity, and this issue was submitted to the jury, who found the defendant guilty of murder in the first degree and assessed his punishment at imprisonment for life, the verdict is sustained, although the evidence on behalf of the defendant would have authorized a verdict of not guilty on account of defendant's alleged insanity.

**2.—Same—Evidence—Hearsay Evidence.**

Where, upon trial of murder, the defendant offered evidence to support his plea of insanity, and the witness was permitted to state his opinion as to defendant's sanity upon the facts which he related, there was no error in not permitting him to testify as to what the witness had heard others say and what he had heard in regard to a difficulty between defendant and a certain third party, who was in attendance on court.

**3.—Same—Evidence—Medical Works.**

Where, upon trial of murder, the defendant interposed the plea of insanity, there was no error in refusing to admit in evidence a chapter of a certain medical work on mental and nervous diseases.

**4.—Same—Evidence—Practice in District Court—Order of Trial—Statutes Construed.**

While article 697, Code Criminal Procedure, prescribes the order of trial, yet article 698, id., provides that the court shall allow testimony to be introduced at any time before the argument of the case is concluded, if it appears necessary to the due administration of justice; and there was no error in admitting testimony describing defendant's demeanor, appearance

and his declarations at the time of the shooting as bearing on the issue of insanity, after both parties had rested their case.

**5.—Same—Rule Stated—Common Law—Rebuttal.**

The common law rule is practically abrogated by the provisions of our Code of Criminal Procedure, which authorizes the court to admit testimony at any time before argument is concluded, if it appear that it is necessary to a due administration of justice, and if necessary for that purpose, it is admissible whether in rebuttal or not. Following Morris v. State, 30 Texas Crim. App., 95, and other cases.

**6.—Same—Charge of Court—Threats—Self-Defense—Insanity.**

Where, upon trial of murder, defendant claimed under his plea of insanity that he did not rely on threats or self-defense in mitigation or justification of his act, and the State introduced no evidence thereon, but defendant on cross-examination proved threats of deceased, a former difficulty, and that the deceased went armed, and other circumstances bearing on this issue, but which did not bear on the issue of insanity, there was no error in the court's action in charging on the issues of threats and self-defense.

**7.—Same—Charge of Court—Words and Phrases.**

Where the court, in his charge on murder, used the words "sound memory," defendant's criticism that the court should have used the word "mind" instead, is hypercritical.

**8.—Same—Charge of Court—Insanity—Reasonable Doubt.**

Where the court's charge did not require defendant to prove his insanity beyond a reasonable doubt, a criticism that he did so is unfounded.

**9.—Same—Charge of Court—Defendant's Mental Capacity.**

Where appellant criticised the court's charge because it did not inform the jury that the condition of defendant must be such that he did not know the nature and quality of his act or if he did, he did not know that he was doing wrong, but the court's charge, when considered in its entirety, presented this issue fairly, there was no error.

**10.—Same—Charge of Court—Lucid Intervals—Words and Phrases.**

Where the court, in his charge on insanity, used the words "lucid interval," there was no error in the court's failure to define them, as they have a well understood meaning; besides, defendant, if he desired such definition, should have requested an instruction thereon.

**11.—Same—Charge of Court—Paranoiac—Insanity.**

Where all the evidence tended to show paranoiac insanity, if any existed, a limitation in the court's charge to that form of insanity would not have presented error; however, the court's charge embraced all forms of insanity, and the criticism thereto that it limited the consideration of the jury to the form of paranoiac insanity was not well taken.

**12.—Same—Charge of Court—Insanity—Knowledge of Right and Wrong.**

Where defendant contended, on his plea of insanity, that the court should have instructed the jury that even if defendant was sufficiently sane to know the nature and quality of the act, yet if the jury in their judgment found defendant did not know it was wrong, he should be acquitted; and the court's charge instructed the jury if defendant's mental condition was such as to deprive him of a knowledge of right and wrong of the killing so that he did not know the nature and quality of the act to acquit him, the same was a sufficient presentation of that question, especially as the defendant's requested charge on self-defense in connection with his plea of insanity was given.

**13.—Same—Charge of Court—Repetition.**

It was not necessary for the court, in his charge on murder in the first

and second degrees, to qualify these paragraphs by referring to his charge on insanity, where this appeared in its proper place.

### 14.—Same—Charge of Court—Limiting Testimony—Other Transactions.

Where defendant introduced evidence of other assaults made by him on other persons, and the attendant circumstances, for the purpose of showing the peculiar form of his insanity, there was no error, in the absence of a special instruction, in the court's failure to limit said testimony; besides, the jury could not have been misled in convicting him of other offenses.

Appeal from the District Court of Jones. Tried below before the Hon. Jno. B. Thomas.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

L. H. McCrea and W. S. Payne and Chapman & Coombes, for appellant.—The law is, that to establish a defense on the ground of insanity it must be proved that, at the time of committing the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature or quality of the act he was doing, or if he did know it, that he did not know he was doing what was wrong. It follows that an instruction that to establish a defense on the ground of insanity it must be proved that the accused was laboring under such a defect of reason "that it deprived him of a knowledge of the right and wrong of the killing, so that he did not know the nature and quality of the act" is in the face of the law and contrary thereto, and imposes upon the accused a greater burden than the law warrants or justifies. Knights v. State, 58 Neb., 225, 76 A. St. Rep., 80; State v. Brown, 24 L. R. A. (new ed.), 545; Davis v. U. S., 160 U. S., 469; State v. Zorn, 30 id., 317; People v. Barberi, 47 N. Y. Sup., 168; Butler v. State, 78 N. W. Rep., 590; Lowe v. State, 96 id., 417; Flanagan v. People, 11 Am. Rep., 731; United States v. Young, 25 Fed. Rep., 710; Freeman v. People, 47 Am. Decisions, 216; Jolly v. Com., 96 Am. St. Rep., 429; Genz v. State, 59 id., 619; State v. Lewis, 22 Pac. Rep., 241; State v. Harrison, 18 L. R. A., 224; Leach v. State, 22 Texas Crim. App., 279; Carter v. State, 12 Texas, 500; Webb v. State, 5 Texas Crim. App., 596; Williams v. State, 7 id., 163; Clark v. State, 8 id., 350; Hurst v. State, 40 Texas Crim. Rep., 378; Nugent v. State, 46 id., 67; Sartin v. State, 51 id., 571; Cannon v. State, 41 id., 467; Tubb v. State, 55 id., 606; 22 Cyc., 1212; 16 Am. & Eng. Cyc. of Law, p. 619.

On question of insufficiency of the evidence: State v. Brown, 24 L. R. A. (new ed.), 545; Holmes v. State, 20 Texas Crim. App., 110; Davis v. U. S., 40 L. ed. U. S., 499; 12 Cyc., p. 909.

On question of court's charge on self-defense, where plea of insanity is interposed: Rembert v. State, 148 S. W. Rep., 1097; Mooney v. State, 65 S. W. Rep., 926; Anderson v. State, 31 S. W. Rep., 673; Mattison v. State, 54 Texas Crim. Rep., 514, 114 S. W.

Rep., 824; Yardley v. State, 50 Texas Crim. Rep., 644, 100 S. W. Rep., 399; Munroe v. State, 81 S. W. Rep., 726; Earley v. State, 51 Texas Crim. Rep., 382, 103 S. W. Rep., 868.

On question of court's charge on murder in first and second degrees, and failure to refer to plea of insanity: Clark v. State, 51 Texas Crim. Rep., 519; Abbata v. State, 51 id., 510; Best v. State, 58 Texas Crim. Rep., 327, 125 S. W. Rep., 909; McMillan v. State, 58 Texas Crim. Rep., 525, 126 S. W. Rep., 875.

On question of court's charge in failing to limit testimony on extraneous matters: Hanley v. State, 28 Texas Crim. App., 375; Bock v. Rogue, Texas Notes, pp. 543, 648, 697, 782; Foster v. State, 32 Texas Crim. Rep., 39; Holt v. State, 39 Texas Crim. Rep., 282.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted for and convicted of murder in the first degree, and his punishment assessed at imprisonment in the penitentiary for life.

It is not insisted by appellant that the evidence does not support the verdict, if the evidence would justify the jury in finding that he was sane at the time of the commission of the offense, but it is earnestly insisted that the evidence would not justify such a finding. The evidence conclusively shows that appellant was a man who transacted his own business, had been a merchant, owned rent houses, and was fully competent and capable of transacting all business in connection therewith, but it was insisted by appellant that he had delusions on the question of being persecuted; that there were certain people and orders who desired to run him out of town, and desired to take his life. It is further shown that twice prior to this trial appellant had been tried, it being sought to adjudge him an insane person, but in both instances the juries had adjudged him of sound mind. However, based on these illusions or delusions testified to by witnesses, appellant contends that he was suffering from "paranoia"—a form of delusional insanity—and such contention has support in the testimony, and he was, therefore, incapable of knowing and appreciating the fact that the act was a wrongful act, and that under the peculiar form of insanity from which he was suffering, under the "delusions" to which he was subject, he might conceive a condition in his mind (not existent) which would justify his act, and while laboring under this condition of mind, he would not appreciate and know that it was wrong to kill a man. While there is much evidence in the record to sustain the contention that if appellant conceived the idea, rightfully or wrongfully, that a given person held animosity towards him and intended to do him harm, in regard to such person, owing to such delusion, appellant would be in such state of mind that he should not be held criminally responsible for his acts under such conditions. Yet, as said

in the Tubbs case (55 Texas Crim. Rep., 62) the appellant may be a singular and strange man, and that he may, in the light of the record, possibly be an insane man, yet this issue was submitted to the triers of fact under our law, and the jury have affirmed their solemn conviction that at the time he shot and killed the deceased, he was laboring under no such infirmity of mind as would excuse him for his crime. And whatever our view individually may be, we have no right to disturb their verdict where there is evidence to sustain it, and in this case, taking the State's view, there is ample testimony to support their finding. The trial judge, in overruling the motion for new trial, has affirmed his belief in the sanity of appellant, and we would not feel authorized to grant a rehearing on this ground. And under these circumstances we will take up and review each assignment of error.

In the first and second bills of exception it is shown that Madison Morgan had testified that in his opinion he did not think appellant capable of knowing the nature and quality of the offense alleged against him, and had recited an instance wherein appellant had made a seemingly unprovoked assault on Mr. Tackett, and recited other matters upon which he based his opinion, and he was asked if he had heard of others, among them an attack on John A. Wood, and what he heard. This witness was permitted to detail everything happening within his view, and all incidents within his knowledge, but on objection was not permitted to detail what third persons had told him as to acts or conduct of appellant. In this we do not think the court erred, especially as it is shown that in one instance he was requested to state what he had heard in regard to a difficulty between appellant and Mr. Wood. The record discloses that Mr. Wood was in attendance on court, and was excused by appellant without being placed on the witness stand.

In the third bill it is shown that appellant offered in evidence Chapter No. 14, extending from page 843 to 867, of Church & Peterson's work on mental and nervous diseases. There was no error in sustaining the objection to the introduction of this chapter of a medical work. It may be that the authors were gifted and learned men, and had ably expressed their views on mental diseases and disorders, yet this court has always held such evidence inadmissible. Burt v. State, 38 Texas Crim. Rep., 397, and for an extensive list of authorities see Wharton's Crim. Law, sec. 538.

After the State had made its case in chief, and the defendant had introduced his testimony and rested, the State then introduced Dr. G. J. Hubbert and W. A. McKenzie, both of whom were eyewitnesses to the tragedy. The defendant objected to them being permitted to testify, claiming their testimony was not in rebuttal of any testimony offered in behalf of defendant, as he relied on the plea of insanity, and did not attempt to justify his act. While article 697 of the Code of Criminal Procedure prescribes the order of a trial, yet article 698 provides that the court shall allow testimony to be introduced at any

time before the argument of the case is concluded, if it appears neces-
sary to the due administration of justice, and in Morris v. State, 30
Texas Crim. App., 95, this court said the rule of the common law
which confines cross-examination of a witness to matters inquired about
on his examination in chief, or to matters in rebuttal, does not obtain
in this State; that the common law rule is practically abrogated by the
provision of our Code of Criminal Procedure which authorizes the
court to admit testimony at any time before argument is concluded,
if it appear that it is necessary to a due administration of justice,
and if necessary for that purpose, it is admissible whether in rebuttal
or not. See also Upton v. State, 33 Texas Crim. Rep., 231, and Went-
worth v. Crawford, 11 Texas, 127. In this case it was permissible for
these witnesses to describe appellant's acts on that occasion; his de-
meanor and appearance as bearing on the issue of whether he was sane
or insane at the time of the fatal shots, as well as the remark made by
appellant shortly after he fired the shots, when he inquired as to how
many times he struck deceased, and when told only once, his remark,
"that he was getting old and his eyesight bad." All these incidents
would aid the jury in passing on his plea of delusive insanity, and
whether he was in that state of mind at the time of the killing as to
comprehend the nature of his act.

The appellant earnestly insists that the court erred in this case in
charging on threats and self-defense, contending that his sole defense
was a plea of insanity, and he did not rely on the threats nor self-
defense in mitigation nor justification of his act. The State introduced
no evidence on these issues, but the defendant on cross-examination of
the State's witnesses proved that immediately after appellant had fired
the fatal shots and advanced and struck deceased over the head, when
caught and disarmed, appellant exclaimed: "I had to do this," and
just before making this remark, and after firing the shots, had asked,
"Are you satisfied?" In addition to this defendant developed that
but a short time prior to the fatal encounter deceased had given appel-
lant a severe whipping, and had threatened to take the life of appel-
lant, and these threats had been communicated to appellant before he
shot and killed deceased, and when these threats were communicated
to him, and he was told that deceased had called him a "G-d d-n one-
eyed s-n of a b-h, and that he would put the other eye out if he got a
chance," appellant had only remarked, "A man is a darned fool to
make any such threats." Appellant also developed that deceased was
a man who went armed, brought witnesses to prove that they had seen
deceased with a shot gun on different occasions about this time, and
had placed it in the witnesses' place of business. And proved that wit-
nesses had seen deceased with a pistol on frequent occasions just before
the killing. Appellant introduced other facts and circumstances bear-
ing on this issue, and what his object and purpose was in so doing we
fail to see, if it was not to raise the issues that he now complains of the
action of the court in submitting to the jury. None of these facts or

circumstances would tend to show whether appellant was sane or insane, and having developed them and introduced witnesses to prove these facts, appellant can not be heard now to complain of the action of the court in submitting these issues to the jury, and that they were properly submitted, if called for, appellant does not question. In addition to this appellant requested a charge on one phase of self-defense, which was given by the court.

Appellant complains of the following paragraph of the court's charge: "Every person with a sound memory and discretion, who shall unlawfully kill any reasonable creature in being within this State, with malice aforethought, either express or implied, shall be deemed guilty of murder. Murder is distinguishable from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or manslaughter, or which 'excuse or justify the homicide." Appellant's criticism is that the court should have used the word "mind" where "memory" is used. The court submitted the issue of insanity in its proper place. The other criticisms of the definitions of murder and in submitting that issue are likewise hypercritical, and the language of the court in submitting the offense of murder has been so frequently approved by this court we do not deem it necessary to discuss it. For authorities see sec. 418, et seq. Branch's Crim. Law.

On the issue of insanity the court charged the jury: "Among the defenses relied upon by the defendant in this case is that of insanity. No act done in a state of insanity can be punished as an offense. Every person charged with crime, is presumed to be sane—that is of sound memory and discretion, until the contrary is shown by proof. If, under the law as herein given you in charge, and the testimony of the witnesses, the guilt of the defendant has been established beyond a reasonable doubt, it devolves on the defendant to establish his insanity at the time of committing the act, in order to excuse himself from legal responsibility; that is to say, the burden of proof to establish his plea of insanity devolves upon the defendant. If the State has, as before explained, proved the facts which constitute the offense charged in the bill of indictment, your next inquiry will be, has the defendant established by proof his plea of insanity, or has it been established by proof from any source; if it has, the law excuses him from criminal liability, and you should acquit him. The question of the insanity of the defendant has exclusive reference to the act with which he is charged, and the time of the commission of the same. If he was sane at the time of the commission of the crime, he is amenable to the law. As to his mental condition at the time, with reference to the crime alleged, it is peculiarly a question of fact to be decided by you from all the evidence in the case, before the act, at the time, and after. The law does not hold a man for an act committed by him when insane, and it is not necessary that the insanity should be permanent or that the person charged should have been a raving maniac at the

time of the commission of the act in order to absolve the person from punishment prescribed by law. It is sufficient to absolve such person if it is shown that he was insane at the time of the commission of the act, though it be shown that such person at other times was sane. On the other hand the fact that such person may have been at other times insane or may have been of impaired mind, is not sufficient to absolve such person from punishment prescribed by law from the commission of the act, if it was committed by him during a lucid interval. A person can discharge himself from responsibility only by proving that his intellect was so disordered at the time he committed the act, that he did not know the nature and quality of the act. he was doing.

"If you believe from the evidence that the defendant killed Riley Newton, but at the time he did so that he was what is called a paranoiac, or was suffering from delusion of persecution, or from a homicidal mania, though you might believe he was sane on any and all other of the affairs or transactions of life, or that he was suffering from some other form of insanity, and that at the time of the killing by reason of such insanity, delusion or mania, the defendant's mind was in an impaired and unsound state so that for the time being it overruled his reason or judgment, or conscience, or that his delusion or mania was such, that it deprived him of a knowledge of the right and wrong of the killing so that he did not know the nature and quality of the act then you will acquit him on the ground of insanity and so say by your verdict; and if you acquit the defendant on this ground your verdict will read, 'We, the jury, acquit the defendant on the ground of insanity.' "

The first criticism of this charge is that it required appellant to prove his insanity "beyond a reasonable doubt." A reading of the charge will disclose that this criticism is not well founded. The next criticism is that the charge "did not inform the jury the defendant condition must be such that the defendant did not know the nature and quality of his acts, or if he did, he did not know that he was doing wrong." In the first paragraph above copied, which is thus criticised by appellant, all these words do not occur, but they will be found in the second paragraph where the court applied the law. One must read the entire charge, and its connection, and if it as a whole presents the issue fairly, no error would be apparent. The third complaint is, that the court did not explain the meaning of the words "lucid interval." These words have a well understood meaning, but if appellant desired a definition of them to be given, he should have requested an instruction. It is never incumbent upon the court to explain the meaning of words, whose meaning are as well understood by all mankind as is the meaning of these words, unless requested so to do.

The second paragraph of the above charge is criticised because it limits the consideration of the jury to the form of insanity termed paranoiac insanity. As all the evidence tended to show this form of

insanity, if any existed, this would not present error if the criticism
was authorized, but if one reads the charge herein copied it will be
seen that this criticism is also unfounded, for the court instructs the
jury, "if he was what is called a paranoiac, or was suffering from
delusion of persecution, or from a homicidal mania, or that he was
suffering from some other form of insanity," etc. Thus it is seen that
if he was suffering from any form of insanity was submitted to the
jury. Another criticism is that the court should have instructed the
jury that even if appellant was sufficiently sane as to "know the nature
and quality of the act," yet if the jury in their judgment find appel-
lant did not know it was wrong he should be acquitted. It is almost
inconceivable that a man could be sane enough to fully appreciate and
know the nature and quality of an act, and yet not know whether it
was right or wrong to commit such an act. The "nature of an act"
as defined in the Century Dictionary is "the attributes which con-
stitute the thing, and distinguish it from all others," while "the quality
of an act" is defined to be the power to clearly and distinctly appre-
hend its nature, and if a person has sufficient mental power to fully
appreciate and know what he is doing, we can not concur in an opinion
that he would not be criminally liable for such an act. Many of us
do not commend all the provisions of our criminal law—some think
some of its provisions wrong, and are sincere in that belief, yet they
would not be justified in violating such provisions. Of course, a man
must be sane enough and have sufficient comprehension to appreciate
and know that such an act is a violation of law, yet there is no sane
person but who knows it is wrong to take human life, and where one
is sane enough to comprehend the nature and quality of the act com-
mitted, it is not incumbent on the court to charge that even though
one comprehended the nature and quality of the offense, yet they must
further find beyond a reasonable doubt that he knew such act was
wrong. The court instructed the jury if appellant's mental condition
was such as to "deprive him of a knowledge of the right and wrong
of the killing so that he did not know the nature and quality of the
act" he should be acquitted, and this, we think, a sufficient presenta-
tion of that question. At least, the jury could not have been misled,
for by the language used they would know that if appellant was in
such mental condition as not to appreciate the gravity of the offense
and know it was wrong, they should acquit. In addition to the above
copied charge, at the request of appellant, the court gave the follow-
ing special charge:

"If you find from a preponderance of the evidence in this case that
at the time of the homicide, the defendant J. J. Montgomery, under
the influence of his delusion supposed Riley Newton to be in the act
of attempting to take away his life, and he, the said defendant, killed
the said Riley Newton as he supposed in self-defense, and that such
delusion was the result of a defective reasoning from such a disease
of the mind as that he did not know the nature and quality of the act,

that is, that he was not in fact acting in his own self-defense viewed from his standpoint and therefore did not know that he was doing wrong, then you will acquit the defendant on the ground of insanity."

Thus it is seen that taking the charge as a whole, together with the special charge given, it is not subject to the criticisms contained in appellant's motion for new trial.

It was not necessary for the court in his charge on murder in the first and second degree to qualify these paragraphs by reference to the charge on insanity. In its proper place this issue was fully presented.

The defendant introduced evidence of assaults made by appellant on other persons, and the attendant circumstances, as he says for the purpose of showing a peculiar form of insanity. The court in his charge did not refer to nor limit the purpose or effect of this testimony, and appellant complains of the action of the court in not limiting it. If appellant desired such instructions he should have made a request that such be done when he himself introduces the testimony. Inasmuch as he brought this testimony into the record, and under no conceivable theory could the jury have been misled into convicting him of one of those offenses, the failure of the court to limit this testimony does not present reversible error.

This is a case in which we frankly admit that the evidence offered on behalf of defendant would have authorized the jury to find that he was suffering from a form of delusive insanity, and taking the life and history of appellant, some of the attending physicians pronounce it paranoia in its secondary stage, and if suffering from this disease, their opinion is he would be mentally unbalanced to the extent that he should not be held responsible for taking the life of any human being. Yet, as hereinbefore stated, this issue has been three times submitted to juries, who heard the testimony, and in many instances knew the witnesses, and each time they find appellant sane. The State's testimony would make him a man capable of transacting all the business affairs of life and protecting his interests; a nervous, irritable man, quick to become angry, and when angry commit acts of violence. A witness for defendant, Judge Montgomery, introduced to detail some circumstances, and who testified he had known appellant for many years, and had dealings with him, when asked as to his sanity, testified that appellant was of such a depraved nature that he did not care what he did, but that he was a sane man and knew right from wrong. Mr. McBride, another witness for defendant, said that "he was sane except when mad, but when he gets mad he wants revenge." A number of other witnesses for defendant, when cross-examined, expressed the opinion that while appellant was at times "queer in his actions and remarks," yet they believed he knew right from wrong, and was a sane man. All the witnesses both for the State and defendant agree that appellant was a capable business man, served as county commissioner of his county, and his erratic way of imagining that people had it in for him was the only thing on which he was not a normal man,

this being virtually the sole basis of his plea of insanity. The evidence shows appellant approached deceased once before, when they quarreled, and deceased had given him a severe whipping; shortly after he recovered from the injuries received, in passing deceased, he pulled a pistol, shot and killed him, remarking, after he shot him down, "Are you satisfied?" The witnesses who witnessed the difficulty virtually all gave to appellant a look and state his acts were those of a rational, sane man, and under such circumstances the judgment must be affirmed.

*Affirmed.*

[Rehearing denied December 18, 1912.—Reporter.]