CLEVE GRIFFIN v. THE STATE.

No. 13435. Delivered May 28, 1930.
Rehearing denied October 8, 1930.
Reported in 31 S. W. (2d) 812.

The opinion states the case.

*Will Hancock* and *Tom Whipple,* both of Waxahachie, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, ninety-nine years in the penitentiary.

Deceased was the father-in-law of appellant. Bad feeling had existed between the two for many years. The State's testimony tended to show that on the morning of the tragedy they met. Appellant's automobile was in the middle of the road and blocked the passage of deceased. According to the res gestae and dying statement of deceased, the appellant said when he met him "The doctors say that I'm going crazy, and I want to kill you before I do." Whereupon he began shooting him; that he got out and tried to protect himself behind his car but that appellant drove his car back and forth and continued to shoot at him; he begged him not to do it, telling him that he had already killed him, to which appellant replied, "Well, you can stand a little more yet."

For the appellant it was shown in substance that he was a cripple, practically unable to walk, but able to drive a car; that deceased had threatened his life and had tried to kill him before; that on the morning of the tragedy they met by accident and that it appeared to appellant that deceased was about to carry out his previous threat to kill him and that he shot in self-defense. Much evidence of insanity was also introduced in behalf of appellant.

These were the main fact issues. The evidence is sufficient in our opinion to support the verdict of the jury.

Twelve bills of exception are shown in the record. Appellant's motion for new trial was overruled and court adjourned on November 30, 1929. Appellant was given sixty days from this date by the Court in which to file bills of exception. This time expired on January 29, 1930. On February 15, 1930, appellant filed all of his bills of exception. These were filed too late for consideration by this Court. The question has been too ofttimes decided to require discussion and we content ourselves with the citation of the following authorities: Art. 760, Vernon's Texas C. C. P., Note 50; Henry v. State, 11 S. W. (2nd) 512; Jackson v. State, 270 S. W. 1018; Martini v. State, 283 S. W. 505.

The only other question properly presented for review which we deem necessary to mention is that of newly discovered evidence. The order overruling appellant's motion for new trial which presents this question recites that "evidence was heard thereon." Appellant has not seen fit to bring this evidence forward for review, there being no statement of facts with this record which purports to contain the evidence heard by the trial court on motion for new trial. The rule is stated in 4 Tex. Jur., Paragraph 142, as follows:

"Where the record shows that the court heard other evidence, as by a recital to that effect in the order, the appellate court will not review an order overruling a motion for a new trial based on the ground of newly discovered evidence."

The following authorities are cited in support of this text: Scroggins v. State, 17 S. W. (2d) 829; Robinson v. State, 16 S. W. (2d) 233, 17 S. W. (2d) 462; Venn v. State, 15 S. W. (2d) 632; Sanchez v. State, 15 S. W. (2d) 632; Botts v. State, 13 S. W. (2d) 846; Cooper v. State, 13 S. W. (2d) 834; Rios v. State, 7 S. W. (2d) 535; Sykes v. State, 2 S. W. (2d) 863; Holmes v. State, 293 S. W. 571; Volantino v. State, 275 S. W. 1077; Brown v. State, 274 S. W. 588; Boyd v. State, 272 S. W. 134; Crouchette v. State, 271 S. W. 99; Jasper v. State, 266 S. W. 508; Hughey v.

State, 265 S. W. 1047; Harcrow v. State, 261 S. W. 1046; Collins v. State, 254 S. W. 805.

The condition of the record presented here forces us to presume that the trial court had before him evidence sufficient to sustain his order overruling appellant's motion for new trial based on the ground of newly discovered evidence. A multitude of authorities so hold.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

MARTIN, JUDGE.—Appellant makes a proper showing that an order of extension was entered by the trial court prior to the expiration of the sixty days originally given for filing bills of exception, and that his twelve bills of exception mentioned in our original opinion were filed within the proper time. Such bills will therefore be considered.

Many of these relate to alleged errors of the court committed in an insanity hearing, which was before a different jury and was a separate and distinct trial from that of the instant case and occurred prior thereto. Appellant appealed to this Court from the finding of the jury in such hearing and same was submitted as Cause No. 13395. This Court dismissed same for lack of jurisdiction. See opinion delivered May 28, 1930, Cleve Griffin, Appellant, v. The State of Texas, Appellee, 29 S. W. 349. In our opinion, appellant's bills of exception which were taken in another and different cause and which related to a sanity hearing not appealable, have no place in this record and are not entitled to consideration. If appellant could not appeal to this Court directly from the result of such proceeding and thus have his bills considered, as was held on the appeal supra, then he ought not to be permitted to do indirectly what we refused to permit him to do directly. The reasons are sufficiently stated in the opinion in Griffin v. State, 29 S. W. 349.

Appellant insists in his motion for rehearing that this Court was in error in refusing to pass on the allegations in his motion for new trial relating to newly discovered evidence. To his motion there is appended Exhibits A and B. Exhibit A purports to be a

certificate from the district judge who tried the instant case and purports to show that the State did not controvert said motion or traverse the same and the only testimony offered as to newly discovered evidence was the "affidavits of the witnesses, which were attached to and were a part of the motion." Exhibit B of the district attorney is substantially to the same effect. Of such a question it was said in Harcrow v. State, 97 Tex. Crim. Rep. 279:

"We regret that we are unable to consider the statement of the learned trial judge which is attached to the motion for rehearing, relative to what matters were and what were not considered at the time the motion for new trial was passed upon. While not questioning the correctness of such statement, of necessity we must be controlled by the recitals in the record as revealed from the transcript and not by an ex parte statement subsequently made and attached to some paper filed in this court."

It has been further stated:

"The appellate court is bound by, and must take the record as it finds it, and, as a rule, it cannot consider matters not shown by the record. The record may not be contradicted, impeached, changed or amended by ex parte affidavits, except where the jurisdiction of the appellate court is involved." 4 Tex. Jur., Paragraph 327. See also same authority, Paragraph 127.

The question originally discussed, as well as the one raised in appellant's motion for rehearing, appears to have been authoritatively decided against him in many cases.

Dr. A. L. Thomas testified to a dying statement of deceased, which purported to detail how the killing happened and further testified: "The statements made by deceased in my presence were not in response to any questions I asked or volunteered—it was a volunteer statement on his part after I got into the room." Dr. Cook thereafter testified in part: "When I got to the hospital and walked into the operating room and Swafford was on the operating table I spoke to him, and he said, 'Doctor, I am shot all to pieces, I am dying, bleeding to death on the inside,' and I then asked him the question. What have you been into? * * * He made no volunteer statement except to the question I asked him. Q. Now Dr. Thomas was in there when you got there? A. No, sir. I suppose I had been there possibly five minutes before he got there." It is insisted that the statements of Dr. Cook show that the dying declarations were made in answer to questions and were not therefore a voluntary statement. The most that can be said of the facts

exhibited in this bill is that they presented a fact question to be decided by the trial judge, whose finding upon a disputed issue would be binding upon this Court. However, giving full effect to Dr. Cook's testimony, we do not regard it as sufficient to destroy the voluntary character of the statement of deceased, since the only question he appears to have asked was "What have you been into?" The voluntary character of a dying declaration is not affected by an interrogatory which was not calculated to lead the deceased to make any particular statement. Hunnicutt v. State, 18 Tex. Crim. App. 516; Grubb v. State, 43 Tex. Crim. Rep. 75; Branch's P. C., Sec. 1866.

Error is alleged in the action of the trial court in refusing to permit appellant while a witness to testify that while in the army hospital he was told by physicians that he had "cerebo spinal syphilis." This was in our opinion hearsay. In an exhaustive opinion the court held in the case of Burt v. State, 38 Tex. Crim. Rep. 436, that statements from medical authorities could not be gotten before the jury. We see no difference in principle between the exclusion of an oral statement made by a physician and his written statement contained in a recognized medical work. If any can exist, the advantage would be with the latter. See Branch's P. C., Paragraph 30; Western Assurance Co. v. Mohlman Co., 40 L. R. A. 570.

Bills are found in the record questioning the Court's action in permitting non-expert witnesses to testify to the sanity of appellant, whom it is alleged were not shown to be qualified. One of these was a deputy sheriff who had been observing appellant and speaking to him for several months. While a proper predicate must be laid as a basis for non-expert testimony of the character noted above, it has been said:

"No rule can be laid down as regards the amount of knowledge which the non-expert witness must possess. The weight the opinion shall have is for the jury alone. * * * Before a non-expert witness on the question of the insanity of accused be permitted to testify, he must show that he is qualified to express an opinion on the subject. It is not necessary, however, that he be able to detail all the appearances and considerations which make up his opinion. The question whether a witness who is a non-expert is competent to testify is for the court to determine." Underhill's Crim. Evd. (3rd Ed.), Paragraph 264.

We are not able to say that the trial court was without a basis for his conclusion that a proper predicate had been laid for the admission of the testimony objected to.

The point is attempted to be presented in Bill of Exception No. 10 that the Court erred in refusing to permit Dr. Jenkins to testify "that a man might be sane at one time and insane at another." This answer on its face would seem to be admissible, but the bill is void of any recital of facts which shows the qualification of this witness to give such testimony. The facts which would constitute a basis for the right of a witness to testify in regard to a matter of this kind appear only as objections in the bill of exception.

We have carefully examined all of appellant's contentions and finding no error in any of them, appellant's motion for rehearing is overruled.

Since new questions are herein passed on, appellant will be granted fifteen days from this date to file motion for rehearing.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.