## Oscar Privett v. The State.

No. 15680. Delivered March 1, 1933.
Reported in 57 S. W. (2d) 1102.

The opinion states the case.

*L. H. Flewellen,* of Ranger, and *Frank Sparks,* of Eastland, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for 50 years.

A former appeal is reported in 44 S. W. (2d) 694.

In his confession appellant stated that he and deceased, Melvin Dunson, had gone with the same girl, and that deceased had become somewhat angered because of his attentions to this girl; that on several occasions deceased had come to his (appelant's) sister's home and endeavored to.get him to fight him; that deceased had been guilty of insulting conduct toward his sister and sister-in-law; that he decided to settle his differences with deceased, and, procuring a pistol, went to deceased's home; that he asked deceased to leave the house and go with him to a railroad; that after he reached the railroad he told deceased what he had come up there for, and deceased said that it was all right. At this point we quote from the confession as follows: "We got to talking about it and I asked about kissing my sister-in-law, and he said he did and he then hit at

me. He didn't hit me and I dodged him. He did not have anything but his fist. I dodged and grabbed my gun and he turned and said, 'Don't shoot,' and then I shot him. I shot him twice as he fell. He was falling when I shot the second time—he said 'Oh,' and just crumpled down and straightened out and only moved one hand. He fell nearly under the bridge of the railroad. I turned around and started off and looked back. I aimed at his heart, is where I shot at first and then when he started falling I just shot him and let him go. I went on down the railroad of Jake Hamon on home. I pitched the gun down and told my sister-in-law I didn't guess we would have any more rackets with Melvin. * * * Yes, I shot him to kill him, and I thought I would just kill him and be done with it."

Appellant's sister and sister-in-law testified that deceased had endeavored on a number of occasions to prevail upon appellant to fight him. They said that two days prior to the homicide deceased had been guilty of insulting conduct toward one of them.

Many witnesses testified that appellant's mentality was of low order. Some of the witnesses stated that appellant had the mind of a 12-year-old child. Other witnesses testified that, in their opinion, appellant did not know the difference between right and wrong.

An issue as to the voluntary character of the confession was raised by appellant's testimony. Appellant testified that the county attorney told him that he wanted him to make a statement. He said, further, that he was advised that if he made the statement it would help him. He denied that the statement introduced in evidence by the state reflected the true facts.

Appellant testified that deceased had frequently mistreated him, and endeavored to engage him in fights. He said that shortly prior to the homicide deceased had been guilty of insulting conduct toward his sister and sister-in-law. Touching the circumstances surrounding the homicide, appellant testified that he had no intention of killing deceased when he went with him to the railroad crossing; that deceased told him while they were going down to the railroad that he was going to "jazz" his (appellant's) sister and sister-in-law; that he had wanted to kill appellant for a long time; that if he killed appellant he could have illicit relations with his female relatives without interference. Appellant said he told deceased he was tired of being cursed by him and asked him why he felt he should run over his sister and sister-in-law. He testified, further, that at this point deceased struck at him with his fist, and he pulled his gun; that he did not know whether deceased had anything

in his hand or not; that he pulled his gun because he was afraid that deceased was going to kill him, and that he did not remember what happened after he shot deceased the first time; that he would not have killed deceased if he had not threatened to kill him and struck at him. Appellant said that deceased was close enough to strike him when he told him he was going to kill him and then violate the chastity of his sister and sister-in-law. He said further that when he shot deceased he thought his life was in danger.

The evidence raised the issue of murder without malice. Appellant excepted to the charge for its failure to apply the law to the facts as is required and provided in chapter 60, page 94, Acts of the 42nd Legislature, which was effective at the time of this trial. The Act mentioned requires all trial courts, in cases whose facts raise the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. In paragraph 4 of the court's charge the abstract proposition of law contained in what we have just set forth, as the substance of the Act, was given in practically the exact language of the statute. The remainder of said amended act reads as follows: "And in appropriate terms in the charge to apply the law to the facts as developed from the evidence." After setting forth an abstract definition of murder without malice, the court instructed the jury, in substance, that if they believed that appellant with malice aforethought killed Melvin Dunson as charged in the indictment, they would find him guilty and assess his punishment at death or confinement in the penitentiary, etc. Thereafter, the court instructed the jury, in substance, that the punishment could not exceed five years in the event the jury had a reasonable doubt as to whether appellant acted upon malice aforethought when he killed deceased. This court has expressly held that the giving of the mere abstract statutory definition of murder without malice is not a sufficient compliance with the statute, and, further, that an instruction to the jury that the punishment could not exceed five years in the event the jury had a reasonable doubt as to whether the accused acted upon malice was not sufficient to meet the demand of the statute that the court, in appropriate terms, apply the law to the facts. Youngblood v. State, 50 S. W. (2d) 315. In Butler v. State, 51

S. W. (2d) 384, the court embraced in the charge an abstract definition of murder without malice as defined in chapter 60, supra. Predicating a reversal on the failure of the court to apply the law to the facts as required by the statute, Judge Lattimore, speaking for the court, used language as follows:

"Manifestly this means that, in a case where there is testimony raising the issue of murder without malice, the trial court must in appropriate terms instruct the jury, in substance, that, if they believe, or have a reasonable doubt thereof, from all the facts and circumstances in evidence, both those occurring at or about the time of the homicide, or prior thereto, that the mind of the accused was in such condition of sudden passion arising from an adequate cause as to render it incapable of cool reflection, and that such cause or causes, if any, was such as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, and that, while in such condition of mind, the accused committed the offense charged, then they could not assess a penalty of more than five years in the penitentiary. We are not trying to lay down a form, but to call attention to what appears to be a necessary interpretation of a recent statute which in words says it 'Shall be the duty of the court * * * in appropriate terms in the charge to apply the law to the facts in evidence.'

"This is not to be taken as holding that the trial judges must undertake to group or enumerate the various things claimed by the accused as having taken place and as having brought his mind into such condition as to render it incapable of cool reflection. This latter method of charging seems universally condemned."

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.