### JOHN FISHER v. THE STATE.

No. 22999. Delivered January 24, 1945.
Rehearing Denied February 28, 1945.

The opinion states the case.

*E. T. Simmang* and *E. T. Simmang, Jr.,* both of Giddings, for appellant.

*Leslie D. Williams,* District Attorney, of Brenham, *Thos. W. Thompson,* County Attorney, of Giddings, *Camp & Camp,* of Cameron, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a conviction on a charge of murder with a life sentence in the penitentiary.

In order to consider the questions raised it will be necessary to discuss the facts in a manner similar to the development of the case. It will also be helpful to keep in mind that the defendant denied his guilt and contested all proof so long as the State was relying on circumstantial evidence. After these circumstances had been so woven about appellant as to make it perfectly apparent that he was the one who shot and killed Jasper Nance on the morning of Easter Sunday in 1944, the appellant then took the witness stand in his own behalf and related the incidents preceding and at the time of the shooting. His plea was self defense. Another defense raised by the evidence and submitted to the jury was insanity.

Nance had driven away from his home early that morning and passed the residence of appellant. He was met on the highway by witnesses a short distance from the place where the body was found and immediately preceding the killing. At this time he was returning to his home. These same witnesses passed the scene of the killing and saw appellant a short distance away with

something across his shoulder which they took to be a gun. Neighbors heard two shots fired and saw a man, whom they described as appellant, walking away from the scene but they did not see Nance, or his truck, and had no intimation that a killing had resulted. Still others passing by saw appellant on the premises after the shooting and not far from the truck in which the body of Nance was found. This truck was standing still in the public road at the usual place for traffic moving east. Some passed the truck without discovering that Nance was shot. Finally witnesses stopped, discovered the dying victim and gave the alarm. When this was done at something like ten o'clock in the morning, appellant was entirely away from the scene. At about one o'clock in the afternoon he returned to find a crowd of people gathered there. He took a seat on the fender of the truck and told the story of seeing a great many cars pass early in the morning and said he had left soon after sun up and visited a number of homes in the neighborhood and that he was just then returning. He did not have a gun with him but his old gun was found under his bed in the house. An examination revealed that it had been recently fired. A discharged cartridge shell and an old ram rod, which he had used to eject the cartridges from his gun, were found near the truck and their location indicated the position that the party stood in firing at the deceased. It also served to connect appellant with the perpetration of the crime. A long chain of circumstantial evidence was introduced by the State which loses its importance in the fact that appellant eventually took the stand and admitted the shooting and made the defense above indicated.

During the progress of the trial the State attempted to show the death of Nance as a result of the gun shot wounds and placed on the stand Dr. Manzel whose testimony was not at all helpful on this question. He had examined the body in the morgue and found nothing that would indicate the cause of his death other than slight wounds in the neck which he said did not go deep enough to produce death. He further stated that Nance might have died from shock. After this the State sought to prove the extent of the wounds by parties who examined them, or witnessed others do so, and introduced evidence as to the amount of blood which was found to have flowed from the wounds. This was traced down the body from the neck onto the car and the ground and described as a large quantity of blood. A most serious contention made by bill of exception is lodged against this evidence. Such contention can not be sustained for two reasons. In the first place this same evidence had been given without objection by several witnesses. In the second place it was pertinent testimony to show the death of Nance as the re-

sult of the wounds found on him. It is not a question of displaying inflammatory evidence such as blood on clothing which would have no other purpose than to horrify a jury. It became important in the state of the case at that time. While this necessity was later relieved by appellant's own testimony, he could not thereby create an error on the admissibility of evidence which in the state of the record was properly admitted.

Another ground upon which a new trial is sought was based on the ruling of the court in excluding the evidence of R. O. Guthrie to the effect that he had lived a neighbor to appellant fifty years and knew that he had "raised to maturity seven children, two sons were school superintendents—one a farmer—one a business man, and three daughters married to upstanding citizens." This evidence was offered in rebuttal of the State's proof that the defendant's reputation as a peaceable citizen was bad. We think it requires no discussion to support our conclusion that the bill does not show error. The father's bad reputation is no more affected by the good reputation of his children than would be a good reputation of the father by the bad reputation of his children.

The issue of insanity was raised by the evidence and properly submitted to the jury. The fourth ground complains that the court refused to admit testimony of conversation between members of the family in recent years relating to the peculiarities and idiosyncrasies of the defendant. Apparently the children and others were permitted to express their opinions of the appellant's mental condition and no force would have been added by reason of what they had said to each other on some previous date. Even so, it is hearsay evidence and is clearly inadmissible. Branch's Penal Code, Section 30, and authorities there cited. See also Montgomery v. State, 151 S. W. 813.

The fifth ground stated in appellant's brief upon which he seeks a reversal of the case complains of the ruling of the court in not admitting the evidence of Grace Hughes, a witness who had testified regarding his mental condition in which he sought her opinion as to what appellant would do under certain detailed circumstances. The witness was a non-expert who is not authorized to answer the hypothetical question submitted. Her answer could have been nothing more than speculation or conjecture. Branch's Penal Code, supra. Also Maxey v. State, 145 S. W. 952.

The sixth ground complains of the ruling of the court in refusing to permit the defendant to detail on re-direct exami-

nation a statement made by him to the sheriff some time after his arrest. Witnesses had quoted appellant as denying any knowledge of the killing after he came back to the scene and in the presence of the crowd which had gathered there. He had also been asked by the prosecution if he had talked to anyone from the time he left home, after the shooting and while making the rounds he had detailed, up until the time he was arrested, to which the witness answered "no." On re-direct examination the appellant sought to produce the statement made by the accused to the sheriff "within six or seven hours" after the homicide. As we understand the record this evidence was for the purpose of rebutting the statements made by witnesses that he had denied knowledge of the killing and also to extend the examination made by the prosecution regarding the statements made by him. Whether or not the evidence sought to be introduced would have any value to the defense is immaterial. It is no part of the res geste and was self-serving. The court correctly excluded it.

Several complaints are lodged at the court's charge and to his refusal to grant special requested charges. These objections and requests are so involved that we have examined them under great difficulty and would find still greater difficulty in discussing them in a comprehensive manner. One complaint is that a portion of the charge is too restrictive in that it limits the defense "to a reasonable EXPECTATION of fear of death or serious bodily injury" instead of a "reasonable APPREHENSION of death or serious bodily injury." Counsel says that there is a vast difference between "expectation" and "apprehension." We observe that in the charge the court once used the word "apprehension" and in the same paragraph, when he applied the law to the facts of the case, he used the word "expectation" with the same meaning. The charge was given under Article 1226 of the Penal Code which uses the word "expectation." Apprehension is a far more liberal word when strictly defined. However, the court used the two words interchangeably and the jury could not have misunderstood its meaning as thus used. The complaint is without merit as the language seems to be the same as in the statute.

Another of the several grounds complains of the court's charge relating to the effect of threats. In this it appears that the court followed the provisions of Article 1258 of the Penal Code and the objection is not sustained. While some of the special requested charges were probably refused as being on the weight of the evidence, an analysis of the very fair and comprehensive charge on the issues raised by the defense seems to

fully comply with all the requests indicated in the special charges to which the accused was entitled.

The appellant had lived in the community many years and reared a large family of children who had taken places of usefulness in their community and state. He had been a trustee of the school for many terms and yet numerous witnesses called by the State testified that his reputation for being a peaceable law abiding citizen was bad. Evidence of his great age was before the jury. He was then approaching and is now four score years. His acts of senility were impressively presented in the evidence and his rights were properly submitted to the jury by the court's charge. Forceful and pathetic arguments have been made in his behalf in this appeal and no doubt before the jury whose exclusive province it is to pass upon their merits. The record reflects care and consideration of this old man in his trial for the murder of a young man, who in all probability had a part in rearing his own family. The case is heart rending and in the manner of its presentation must have been so viewed by the jury. If they did their duty in considering the matters before them as effectively as did the judge trying the case no one has a right to complain further. We have considered the questions of law presented with the same care that the trial court did and find no error in his rulings.

The judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant complains because we did not discuss his Bill of Exception Number Two.

This bill complains of the following matter:

In the development of its case, in chief, the State called the witness Stagner, a rural mail carrier, who testified that some time prior to the killing he met the appellant, who at that time had an old shot gun with him. A gun was exhibited to the witness, which was identified by him as the gun he saw in appellant's possession at the time mentioned. The gun exhibited was the one found in appellant's home shortly after the killing and which the State contended was used in the killing.

In connection with this testimony, the State proved by the witness that at that time he had a conversation with the appel-

lant in which the witness asked him why he didn't get him a good gun, to which appellant laughingly replied: "I believe I will just keep it; it shot a man once." The witness further stated: "* * * but he didn't say who it was and I didn't ask him."

This statement on the part of appellant was objected to as as being irrelevant, immaterial, and inflammatory. The objection was at that time overruled. Later, at the conclusion of the testimony of the witness Stagner, the testimony objected to was by the court withdrawn from the jury's consideration. Appellant contends that reversible error is reflected, nevertheless.

It must be remembered that at the time this testimony was offered, the State's case was entirely circumstantial and was not otherwise until the appellant, testifying in his own behalf, admitted the killing with the gun mentioned. Under the circumstances existing at the time the witness testified to the conversation, we are not prepared to say the testimony was inadmissible, especially in view of the fact that we do not know when the conversation occurred with reference to the killing. It may have been sufficiently close and related thereto to constitute a statement against interest or tendency to show appellant's state of mind.

In view of this condition and the withdrawal of the testimony by the court, we are unable to reach the conclusion that appellant was prejudiced thereby.

We have again examined the record in the light of appellant's contentions as originally presented and remain convinced that reversible error is not reflected by this record.

The motion is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the court.