Bruce Steven McGEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 44026.

Court of Criminal Appeals of Texas.

Oct. 20, 1971.

Rehearing Denied Dec. 7, 1971.

Foy Clement, Abilene, for appellant.

Ed Paynter, Dist. Atty., and Britt Thuman, Asst. Dist. Atty., Abilene, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder with malice; trial was before a jury and the court assessed the punishment at life.

The indictment alleged that on June 17, 1970, the appellant killed Donald Ray Lee by shooting him with a gun.

The appellant's first ground of error complains because the court refused to charge the jury on murder without malice after a proper request by appellant's attorney. The only question on this ground of error is whether the evidence raised an issue of murder without malice.

The record reflects that the shooting occurred in an alley behind Hickman's Cafe in Abilene. The appellant took the stand and a summary of his testimony is as follows: At the time of trial he was 22 years old. On the day of June 16, 1970, the appellant was visiting with Richard Miller. About 10 o'clock he went to Hickman's Cafe. He had been to several other cafes looking for his girlfriend, Leola Grady. He found her at Hickman's and they got into an argument and he left. Leola and several others followed him as he walked out the door. One of them said to him,

"Man, that sure was cold how you were talking to my cousin," (referring to Leola). Another man came up to the first one and said, "Well, whereas, you ought to kick his a‑‑, you know." A girl came up to him and said, "I got my gun, and I am going to kill you; and furthermore, you think you are bad anyhow. You ain't, you know." Further arguments, insults, and threats followed and the appellant thought they were picking on him. The appellant then left the cafe with some friends. He testified he was in a rage at this time. The appellant to his friends went to the Black Satin Lounge, but the appellant later returned by himself to Hickman's. After looking inside he walked out into the alley and saw two young men. He went up to the two young men because he believed they were the ones who had bothered him earlier. One of them was the deceased. When he saw their faces, he recognized that they were not the same people who had bothered him earlier. The deceased said, "Say, man, I heard you jumped on my cousin," (again referring to Leola). They began arguing and the deceased said, "Well, I feel I need to kick your a‑‑, because you think you are bad." The appellant was holding a gun. One of the two men (the record is not clear whether it was the deceased or the other one) said, "Well, I am not scared of no gun; and I am still going to kick your a‑‑." Appellant testified that he fired because he was afraid they were about to attack him. He further testified that he was in a rage at this time, and that he stayed mad nearly all the time because people picked on him. Other relevant portions of his testimony were as follows: [1]

"Q  You couldn't judge? Now, were you mad at those boys in the alley when you killed this boy?

"A  No.

"Q  You weren't mad at him?

"A  I was just defending myself, just like I told you.

---

1. This refers to the time of the shooting incident.

"Q So, you knew what you were doing; is that right?

"A No, I didn't know what I was doing, man.

"Q Well, you knew you had a right to kill somebody. You just said you had a right to kill them, because they were—

"A Well, I was defending myself.

　　*　　*　　*　　*　　*　　*

"Q So, you say you knowed in your own mind that shooting Donald Ray Lee, nothing was wrong with that in your own mind?

"A No, sir, there wasn't.

"Q Perfectly justified?

"A Yes.

"Q Because you thought that he was fixing to shoot you?

"A Yes.

"Q And for no other reason?

"A No other reason.

"Q Well, if he hadn't looked like he was going to shoot you, you wouldn't have shot him; is that right?

"A That's right.

"Q And if he hadn't looked like he was going to shoot you, then your shooting him would have been wrong, in your judgment, then?

"A I guess it would have been."

Elaine Hickman testified that during the first disturbance the appellant was upset and shouting.

Imogene Samuel testified that during the first disturbance the appellant was very angry and upset.

Shirley McClain also testified that during the first disturbance the appellant was angry and upset.

Rudolph Ross testified that the appellant was angry and upset both during the first disturbance and immediately thereafter.

The record is not clear as to how much time elapsed between the first and second arguments, but it was long enough for the appellant to ride to the Black Satin, 14 blocks away, and walk back to Hickman's. The record also reflects that the appellant talked to the deceased and his companion for 30 minutes and that he knew they were not the same people who had bothered him earlier.

There is evidence, then, that the appellant was upset and in a state of rage earlier in the evening, that he returned to the scene and killed the deceased, who had not been involved in the earlier difficulty.

Article 1257c of Vernon's Ann.Penal Code, provides as follows:

"In all cases tried under the provisions of this Act it shall be the duty of the Court, where the facts present the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse *under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection,* and in appropriate terms in the charge to apply the law to the facts as developed from the evidence." [Emphasis added.]

The key words, as applied to this case, are: " * * * under the immediate influence of a sudden passion arising from an adequate cause, * * *."

In 4 Branch's 2d, § 2301, it is stated: "The question of murder without malice should usually be submitted to the jury in an ordinary murder case. Such submission is of course necessary whenever raised by the evidence. As to whether the issue is raised is a question of law for the court,

but its actual existence or determination is solely within the province of the jury." (Citations omitted.)

In Elsmore v. State, 132 Tex.Cr.R. 261, 104 S.W.2d 493, this Court said:

"By virtue of article 1257a the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed. *It is obvious from the statutes herein referred to that when the testimony shows an excited and agitated mind at the time of the killing caused by an act of the deceased*, the accused is entitled to have the matter of whether the killing was committed under the immediate influence of sudden passion arising from an adequate cause submitted to the jury for their determination under an appropriate instruction from the court. We think that the testimony in this case is sufficient to fairly raise that issue, and the learned trial court fell into error in declining to instruct the jury on the law of murder without malice." [Emphasis added.]

In most cases where this Court has reversed for failure to charge on murder without malice, there was evidence of immediate acts of the deceased that enraged the mind of the accused. See: Elsmore v. State, 132 Tex.Cr.R. 261, 104 S.W.2d 493; Henry v. State, 164 Tex.Cr.R. 199, 433, 300 S.W.2d 79; Privett v. State, 123 Tex.Cr.R. 86, 57 S.W.2d 1102; Youngblood v. State, 121 Tex.Cr.R. 465, 50 S.W.2d 315.

■ The appellant himself testified that he was "mad" and in a state of "rage" at the time of the killing. An accused's own testimony is sufficient to put the issue of murder without malice in the case. Tebo

v. State, 133 Tex.Cr.R. 61, 106 S.W.2d 712. However, in this case, the appellant did not testify to any specific event or events which occurred at the time of the killing and which constituted an "adequate cause" from which a "sudden passion" might arise in a person of ordinary temper and influence the appellant to commit murder. The statute requires a charge on murder without malice only where there is: (1) *Immediate* influence of a (2) *sudden* passion arising from (3) *adequate cause*. The terms "anger" and "rage" are not used in the statute, as elements of murder without malice; rather, they are used to define the term "adequate cause." There was no testimony relating to any event or "cause," by the deceased, which could have provoked the appellant to kill the deceased at the time of the shooting. Since there appears to be no cause at all, we are not presented with the question of whether such cause was adequate. Therefore, it is immaterial whether the appellant was "mad" or in a state of "rage."

Thus, the evidence was not such as would require the court to charge on murder without malice under Art. 1257c. However, better practice would have been to have given the charge and remove all doubt as to the question.

The appellant's first ground of error is overruled.

■ The appellant next complains because the court excluded the testimony of Constance Halleck regarding records and conversations concerning the sanity of the appellant. Mrs. Halleck was an employee of the Taylor County Mental Health Center. On voir dire, she testified that the records concerned "voices" being heard by the appellant. The appellant had told a Neighborhood Youth Corps director that he was hearing voices telling him to kill someone. The State's objection that this was hearsay was sustained, and the evidence was excluded.

This Court has not allowed mere hearsay to prove insanity. In Fisher v. State, 148 Tex.Cr.R. 133, 185 S.W.2d 567, the court said:

"The issue of insanity was raised by the evidence and properly submitted to the jury. The fourth ground complains that the court refused to admit testimony of conversations between members of the family in recent years relating to the peculiarities and idiosyncrasies of the defendant. Apparently the children and others were permitted to express their opinions of the appellant's mental condition and no force would have been added by reason of what they had said to each other on some previous date. Even so, it is hearsay evidence and is clearly inadmissible. Branch's Penal Code, Section 30, and authorities there cited. See also Montgomery v. State, 68 Tex.Cr.R. 78, 151 S.W. 813." See also: Griffin v. State, 116 Tex.Cr.R. 497, 31 S.W.2d 812.

The judgment is affirmed.

ODOM, Judge (dissenting).

I cannot agree to the affirmance of this case. I respectfully dissent.

The majority has concluded that, as a matter of law, there are no facts in evidence which would authorize a jury to find that the mind of appellant was incapable of cool reflection when he shot the deceased. The statute (Art. 1257c, V.A.P.C.) only requires facts, sufficient to present the issue, that the killing occurred under the immediate influence of a sudden passion arising from an adequate cause.

The adequate cause in the statute is "such cause as would commonly produce a degree of anger, rage, resentment, or terror [1] in a person of ordinary temper suf-

ficient to render the mind incapable of cool reflection."

The record is replete with testimony that supplies adequate cause to submit the charge on murder without malice. The jury, as the fact finders, could then "remove all doubt as to the question."

I would reverse and remand.

ONION, P. J., joins in this dissent.

---

1. Anger is the general term for the emotional reaction of extreme displeasure and suggests neither a definite degree of intensity, nor an outward manifestation; rage implies loss of self-control from violence of emotion; resentment is a feeling of indignant displeasure at something regarded as a wrong, insult, or injury; and terror is a state of intensive fear. See Webster's Dictionary.