MONROE LEWIS V. THE STATE.

No. 6233. Decided May 19, 1921.

**1.—Murder—Manslaughter—Charge of Court—Rule Stated—Practice in Trial Court.**

In a doubtful case a charge of manslaughter should be given, Pickens v. State, 86 Texas Crim. Rep., 662, and other cases; and after all the evidence is in, if it is questionable in the court's mind as to whether the issue of manslaughter is raised, it should be resolved in the defendant's favor, and the matter passed to the jury. Following Steen v. State, 88 Texas Crim. Rep. 256.

2.—Same—Manslaughter—Rule Stated—Charge of Court—Practice in Trial Courts.

The court does not determine the weight of the testimony, nor whether it is true or false in concluding whether to submit manslaughter. His only duty is to ascertain if any evidence raises the issue, regardless of what he may think of its cogency.

3.—Same—Self-defense—Manslaughter—Charge of Court—Case Stated—Requested Charge.

Where, upon trial of murder, the evidence raised the issue of self-defense, which was submitted to the jury, but the jury still had a right from the evidence to believe that deceased and his son made an assault on appellant and that the three of them became engaged in a fight and struggle. and from this alone, or in connection with previous abuse and assault, appellant's mind became so inflamed as to render him incapable of cool reflection, and that the facts and circumstances were sufficient to produce such a state of mind in a person of ordinary temper, the court should have submitted manslaughter, although the defendant's requested charge thereon was incorrect.

4.—Same—Insult to Female Relative—Adequate Cause—Manslaughter.

Where the evidence showed that deceased called appellant a "son-of-a-bitch," this would not support a charge on insult to a female relative, but such language, in connection with other things might be adequate cause; and in the instant case the jury ought to have been told that if the conduct and language of deceased, or deceased and his son, either alone or in con. nection with any previous abuse or assault by deceased aroused such a degree of anger, etc., as rendered him incapable of cool reflection, defendant would be guilty of only manslaughter.

5.—Same—Self-defense—Manslaughter—Rule Stated.

If the case is either murder or perfect self-defense, it is not error to fail to charge on manslaughter, but where the case becomes involved from the issues raised, it is a rare instance where the issue of manslaughter does not also become pertinent. Following Washington v. State, 68 Texas Crim. Rep., 589, and other cases.

6.—Same—Self-defense—Apparent Danger—Charge of Court—Standpoint of Defendant.

If from the acts of deceased and his son, or from the acts of either or both of them, or if from the words of either or both of them, coupled with the acts of either or both, it reasonably appeared to the defendant as viewed from his standpoint at the time, and all the facts and circumstances within his knowledge, that he was in danger of losing his life, or suffering serious bodily injury at the hands of either or both of them, and he killed deceased under such circumstances, he should be acquitted under a proper charge of the court.

7.—Same—Apparent Danger—Change of Court—Standpoint of Defendant.

The appearance of danger must be viewed from defendant's standpoint, and if it appeared to him from such standpoint from the acts or words, coupled with the acts of his assailant, that his life was in danger, he had a right to act on these appearances, Following Swain v. State, 48 Texas Crim. Rep., 103.

8.—Same—Charge of Court—Reasonable Doubt—Rule Stated—Murder.

It is always proper, in cases of murder where manslaughter and self-defense are issues, to charge that if the jury find from the evidence. beyond a reasonable doubt, that accused with malice aforethought killed deceased and that he was not acting under the influence of sudden passion aroused

from an adequate cause and that he was not acting in self-defense, they would find him guilty of murder.

### 9.—Same—Verdict by Lot—Charge of Court—Weight of Evidence.

Upon trial of murder there was no reversible error in the court's charge instructing the jury that the question of the guilt of the defendant must not be determined by lot, or in any manner by chance, and that in case of conviction the punishment to be assessed must not be determined in any such manner, as this was not a charge on the weight of the evidence.

### 10.—Same—Opinion of Witness—Evidence—Shorthand Rendering of Facts.

Where, upon trial of murder, an issue was joined as to whether the condition of the ground at the place of the killing was the result of a scuffle during the difficulty, or was caused by people tramping around there after the killing, there was no error in excluding the answer to the question. "What in your opinion did the tracks, heel prints, and tearing down of corn-stalks indicate,"? as this would not come under a shorthand rendering of the facts.

Appeal from the District Court of Guadalupe. Tried below before the Honorable M. Kennon.

Appeal from a conviction of murder; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*Wurzbach & Wirtz, B. S. Terrell* and *Dibrell & Mosheim,* for appellant.—On question of manslaughter: Arnwine v. State, 90 S. W. Rep., 39, and cases cited in opinion.

On question of reasonable doubt: Jones v. State, 13 Texas Crim. App., 1; Templeton v. State, 5 id., 398; Brinkoeter v. State, 14 id., 67; Johnson v. State, 27 id., 163; Lewis v. State, 29 id., 105.

*R. H. Hamilton,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was convicted of the murder of Clarence Mathews, and his punishment assessed at forty years' confinement in the penitentiary.

The court declined to charge on manslaughter. Timely objections were urged because of this omission, and a special charge on the subject, presented, which was refused.

All the parties to this homicide were negroes. The trouble resulting in the killing arose over a dispute between appellant on the one hand, and the deceased, Clarence Mathews, and his son Ewart, on the other, over the manner in which the Mathews were gathering corn. Cleveland Williams was assisting in gathering corn. He was in sight of the parties, and testified about the killing, but claims not to have heard what was said between them. Ewart Mathews was the main State's witness. His and Williams' testimony make a case of unprovoked murder, with no semblance of either manslaughter or self-defense, in which Clarence Mathews was killed, and Ewart Mathews shot and

severely wounded by appellant. Appellant was dependent almost wholly on his own testimony for the contention that the issue of manslaughter was in the case. If any evidence raised the issue, the determination of it passed from the court to the jury, under appropriate instructions. "In a doubtful case the charge on manslaughter should be given." Pickens v. State, 86 Texas Crim. Rep., 662; McLaughlin v. State, 10 Texas Crim. App., 359; Arnwine v. State, 49 Texas Crim. Rep., 6. After all the evidence is in, if it is questionable in the court's mind as to whether the issue of manslaughter is raised, it should be resolved in the defendant's favor, and the matter passed to the jury." Steen v. State, 88 Texas Crim. Rep., 256, 225 S. W. Rep., 531.

The substance of appellant's testimony is: "that on the morning of the killing, the deceased, his son, and Williams, were in one part of defendant's corn field, gathering corn for defendant's landlord. That previously .there had been an agreement between defendant and the deceased as to the manner of dividing the corn. That a few days before the killing deceased and his son in gathering another portion of the corn, made a mistake in dividing the rows. That on the morning of the killing, defendant had prepared to haul a wagon load of watermelons from his home to San Marcos, and had hitched his mules to the wagon and directed his boy and a woman by the name of Tinie Saffold, to drive the wagon along the turning road through the field, toward the premises of Mr. Scheibe, where he had engaged to deliver some watermelons enroute to San Marcos. That he went in a different direction by a potato patch to get his pistol that he had dropped there the night previous and went from that place to the northwest corner of the corn field to examine where the corn had been gathered to ascertain if it had been gathered according to the previous agreement. He was a distance of about 150 yards from deceased and his son inspecting the rows and did not invite deceased and his son to assist him in making the inspection, but that deceased's son first came to where he was and inquired of him what the trouble was; that defendant informed deceased's son that a mistake had been made there, as had been made in the other field, but no angry words passed between them, and that in a few minutes the deceased voluntarily got from the wagon which he was driving and came over to the place where defendant and deceased's son were examining the rows that had been gathered and those that had been left ungathered and in an insulting way addressed defendant; that one word led on to another and that deceased cursed defendant and called him a black son-of-a-bitch and attempted to strike defendant with his first; that thereupon a difficulty ensued between defendant, deceased and deceased's son, and that defendant was assaulted by both deceased and his son; was struck with an axe handle by the son of deceased and at the very time the deceased was shot both deceased and his son were attempting to commit a battery upon defendant." That while the assaults were being made on him he was trying to get his pistol out, but deceased fired at

appellant before he succeeded in getting his pistol, and that when he did secure it he shot both deceased and his son. Evidence was introduced tending to show that at the place where the difficulty started there were indications that a struggle or scuffle had occurred. corn and weeds being mashed down, and foot prints all about. The State combatted this by showing that many parties had been walking about the place before the observations were made. Appellant also testified that on a prior occasion, about cotton chopping time, deceased had charged him with not carrying out his contract about the crop, had cursed him and threatened an assault upon him with a monkey wrench if he did not get the money and pay a small amount he owed deceased by Saturday; that appellant got the money, paid deceased, and that matters moved along fairly well until the trouble came up about the corn. We have given more in detail the evidence of appellant than of the State, because it is to the former we must look to determine whether manslaughter should have been submitted.

The court does not determine the weight of the testimony, nor whether it is true or false, in concluding whether to submit manslaughter. His only duty is to ascertain if any evidence raises the issue, regardless of what he may think of its cogency. "If there is evidence which, however weak or inconclusive it may seem to the court, tends to prove facts from which the jury may deduce a finding of manslaughter, it is error to fail to charge on it." (Branch's Criminal Law, Section 504, and a collation of authorities supporting the text quoted.) As was tersely stated by Judge LATTIMORE in the Steen case, supra. "the causes named in our statute as adequate to reduce a homicide to manslaughter are well understood to be instances, and not limitations." The jury had the right, and it was their province to believe any part of the testimony of appellant or any other witness, which to them seemed reasonable, and on the other hand, to reject all or any part to which they did not give credence. The jury evidently rejected appellant's testimony in which he claims that deceased shot at him before he killed deceased. Having found against appellant on the issue of self-defense, they still had a right to believe that deceased and his son made an assault on appellant, and that the three of them became engaged in a fight and struggle, and from this alone, or in connection with previous abuse and assault with the monkey wrench, appellant's mind became so inflamed from anger. rage, resentment or terror, as to render it incapable of cool reflection, and that the facts and circumstances were sufficient to produce such a state of mind in a person of ordinary temper. If they should have reached such a conclusion from the evidence, no rule is given them in the charge directing them what to do under such a finding.

We do not believe the special charge requested by appellant on manslaughter was correct. It embraced a clause telling the jury that "insulting words of the person killed towards a female relative, etc." was "adequate cause." We find in the record no testimony justifying such

a charge. If it was predicated on the evidence that deceased called appellant a "son-of-a-bitch," it was not the law. It has been held such language, however obnoxious it may be, will not support such a charge.' (Authorities collated under Section 505, Branch's Criminal Law). But such language, in connection with other things, might be "adequate cause" under Article 1130, P. C.: providing, "By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection." If the evidence raises an issue of fact as to something which Article 1132, P. C. expressly makes "adequate cause," such as a blow causing pain, the jury ought to be told, if they find it did occur, it would be adequate cause; and where the facts are involved it is always proper to submit a general charge in addition thereto. We believe in the instant case the jury ought to have been told in some appropriate way, that if the conduct and language of deceased, or deceased and his son, either alone or in connection with any previous abuse or assault by deceased, upon appellant, aroused in his mind such a degree of anger, rage, resentment or terror as rendered him incapable of cool reflection, and they believe the facts and circumstances were sufficient to have produced such state of mind in a person of ordinary temper, then the same would be "adequate cause," and if the killing occurred under such circumstances the appellant would be guilty of manslaughter, unless he was acting in self-defense.

"If the case is either murder or perfect self-defense, it is not error to fail to charge on manslaughter;" (Branch's Crim. Law, Section 505, and collated authorities); but where the case becomes involved from the issues raised, and it is claimed the killing resulted from a fight, and the facts of its inception or progress, become controverted issues raising the question of self-defense, it is a rare instance where the issue of manslaughter does not also become pertinent. Steen v. State, 88 Texas Crim. Rep., 256, 225 S. W. Rep., 529; Washington v. State, 68 Texas Crim. Rep., 589, 151 S. W. Rep., 819; Menefee v. State, 67 Texas Crim. Rep., 201, 149 S. W. Rep., 138; Pickens v. State, 86 Texas Crim. Rep., 662, 218 S. W. Rep., 755; Arnwine v. State, 49 Texas Crim. Rep., 6, 90 S. W. Rep., 39.

Upon the issue of self-defense the court charged that if deceased had shot at appellant with a pistol, or if deceased's son was striking, or was in the act of striking appellant with an axe-handle, he should be acquitted. Exception was reserved to this charge as being too restrictive, in that it singled out certain things under which the jury might acquit, but failed to enumerate all the facts and circumstances shown by the evidence, or which the evidence tended to show, as authorizing the appellant to act in self-defense.

The court did not charge on appearance of danger as viewed from appellant's standpoint, and a special charge was requested on that subject as follows: "In this case the court, at defendant's request, in-

structs the jury as follows: In considering the action of the defendant at the time of the killing you will consider the same in the light of facts and circumstances, as you believe from the evidence, they appeared to the defendant at the time of the killing, and to the defendant alone, and not from any other standpoint, and determine from the evidence what were the appearances to the defendant and what the standpoint of the defendant was, and in what light he in fact did view the facts and circumstances at the time. And if you believe from the evidence the defendant, so viewing the facts and circumstances believed his life in danger, or his person in danger of serious bodily injury from deceased, or from any other person present and acting with deceased, shot and killed the deceased, you will acquit the defendant." The court refused to give the charge, and exception was reserved. The two assignments last above mentioned may be treated together. The writer, from experience, knows that where a case is developed by witnesses of the character relied on by the State and defendant in this case, the issues are often not clearly drawn; the trial court has much difficulty in determining what issues are raised, and the jury in finding which are established; much testimony may be rejected by the jury because not comporting with human experience generally; therefore the frequent necessity of the trial judge resorting to a general submission of the various issues. The jury had a right to, and from the verdict evidently did, disregard appellant's testimony that deceased shot at him, and that his (deceased's) son struck, or was striking, appellant with an axe-handle, because they were told if the killing occurred under those circumstances they should acquit. The jury found that appellant was in no actual danger of suffering death or serious bodily injury. If no other issue than actual attack, and danger was in the case, there was no error in the charge given, or the one refused. While the jury evidently disbelieved appellant's theory of the attack upon him with a pistol and axe-handle, yet there was evidence from which they could have found that deceased had previously ill treated, cursed, assaulted and threatened appellant; they could have found that a struggle and fight occurred at the time of the killing; that both deceased and his son were engaged in it as against appellant; that he was contending against more than one assailant, though perhaps they were not armed as he claimed; if so he had a right to act upon the hostile demonstration of either or both. If it did happen in such wise, how did it look to appellant at the time? His theory was that deceased and his son had failed to gather one field of corn according to agreement, and had promised to correct it when they gathered the field where the killing occurred; that upon going to where they were at work, and checking up the rows he found they not only had not corrected the other error, but were further violating their contract, and made a joint assault upon him when he remonstrated with them, and threatened to go to law about their differences. The affair may not have happened that way, and the jury may have so found; but they should have been told what

the law was in event they did adopt even a part of appellant's theory. Under Article 1105, P. C.—Subdivision 1, we believe, under the facts of this case, the jury should have been told, if from the acts of deceased and his son, or from the acts of either or both of them, or if from the words of either or both of them, coupled with the acts of either or both, it reasonably appeared to appellant as viewed from his standpoint at the time from all the facts and circumstances within his knowledge, that he was in danger of losing his life, or suffering serious bodily injury at the hands of either or both of them, and he killed deceased under such circumstances, he should be acquitted.

We cannot give our unqualified endorsement to the special requested charge copied above. It may not have been so designed, but it rather tends to convey the idea that the whole transaction, the whole case, should be viewed from the standpoint of the defendant; there are expressions in some of the opinions which would authorize such a conclusion; but it is our understanding of the law that it is the question of the appearance of danger that must be viewed from the defendant's standpoint. If it appeared to appellant, viewing it from his standpoint, from the acts, or words coupled with the acts of his assailants, that his life was in danger, he had a right to act on these appearances. Swain v. State, 48 Texas Crim. Rep., 103.

In the fifth paragraph of the court's charge the jury were told, in substance, if they found from the evidence that defendant unlawfully and with malice aforethought killed Clarence Mathews, to find him guilty of murder. The charge is attacked because it does not tell the jury they must so find from the evidence "beyond a reasonable doubt." The criticism is well taken. The error was doubtless the result of an oversight. In view of another trial we would suggest that where manslaughter and self-defense are issues the jury must find three things beyond a reasonable doubt before they are warranted in convicting for murder. (a) That the accused acted with malice aforethought; (b) that the killing did not occur under circumstances which would reduce the offense to manslaughter; (c) and that accused was not acting in self-defense.

It is always proper to embrace them in the clause submitting murder, substantially telling the jury, if they find from the evidence beyond a reasonable doubt that accused, with malice aforethought killed deceased, and that he was not acting under the influence of sudden passion aroused from an adequate cause, and that he was not acting in self-defense, they would find him guilty of murder.

The court charged the jury: "You are further instruced that the question of the guilt of the defendant must not be determined by lot, or in any manner by chance; and in case of conviction, the punishment to be assessed must not be determined in any such manner." Exception was reserved to the foregoing charge on the ground that it conveyed to the jury the impression that the court was of the opinion that defendant would be convicted, and in what manner the punishment

shall be determined. We cannot agree that the charge is subject to such construction. We must assume that the jurors were ordinarily intelligent citizens, otherwise they ought not to have been on the jury. They knew from the beginning of the trial to its close that the main issue was to determine whether accused was guilty; that was the question around which all the evidence revolved, and the court told them that question must not be determined by chance or lot; and then in effect said if you find he is guilty, you must not determine the punishment in that manner. The jury knew beforehand that conviction must be followed by punishment, and the court properly admonished them what to avoid in fixing it.

An issue was joined between the State and accused as to whether the condition of the ground and vegetation at the place of the killing was the result of a scuffle during the difficulty, or was caused by people tramping around there after the killing. Witnesses for appellant, after describing the appearance of the surroundings, were asked, "What, in your opinion, did the tracks, heel prints, and tearing down of the corn stalks indicate?" The State objected because it was calling for an opinion and conclusion of the witnesses. The objection was sustained. If permitted they would have answered that it indicated a scuffle there on the ground. We hardly think this would come under a "shorthand" rendering of the facts. In most cases where that rule has been invoked the witness, in an effort to describe a thing or condition, used the expression complained of to describe it. Here the very issue for the jury was: "What caused the conditions?" and after having otherwise described it, it is sought to have the witness express his opinion and draw his conclusion as to what caused it. We think it was going further than the rule authorizes, and would have been permitting the substitution of the witness' conclusion for that of the jury. A correct rule of evidence should work for or against the State and accused alike. If the accused could properly have elicited such an answer, then with equal propriety a State's witness could have testified that he observed the conditions, and in his opinion they were caused by people walking about the place after the killing. The jury would have been called upon to determine which witness' opinion was entitled to most weight, instead of reaching their own conclusion from the description given.

The other questions raised by bills of exception will not likely occur on another trial, and are not discussed.

For the errors pointed out the judgment must be reversed and the cause remanded.

*Reversed and remanded.*