### H. A. CALVERT V. THE STATE.

No. 10629.　Delivered March 2, 1927.

**1.—Murder—Requested Charge—On Manslaughter—Improperly Refused.**

It is well settled in this state that where the evidence on a trial for murder raises the issue of manslaughter, it is error to refuse to submit the issue to the jury. If the evidence, however weak or inconclusive it may seem to the court, tends to prove facts from which the jury may deduce a finding of manslaughter, it is error to fail to charge on it, and the refusal to so charge in this case demands its reversal. See Branch's Crim. Law, Sec. 504, for collation of authorities.

**2.—Same—Impeaching Witness—Cross-Examination—Held Proper.**

Where a witness has been impeached by proof that such witness had been convicted of an offense, such witness may explain the circumstances

in connection with such conviction in rebuttal of the implication of untruthfulness which is raised by such proof, and thereby serve to reinstate him as a witness. See Branch's Ann. P. C., Sec. 172, p. 105.

Appeal from the District Court of Presidio County. Tried below before the Hon. C. R. Sutton, Judge.

Appeal from a conviction of murder, penalty five years in the penitentiary.

The opinion states the case.

K. C. *Miller* of Marfa, *Neill & Hill* of San Angelo, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BETHEA, JUDGE.—Appellant was convicted of murder, and his punishment assessed at five years in the penitentiary.

The court declined to charge on manslaughter. Timely objections were urged because of this omission, and a special charge on the subject was presented, which was refused, as is shown by bill of exception No. 14.

As was said in the Lewis case, 231 S. W. 113:

"The court does not determine the weight of the testimony nor whether it is true or false in concluding whether to submit manslaughter. His only duty is to ascertain if any evidence raises the issue, regardless of what he may think of its cogency."

"If there is evidence which, however weak or inconclusive it may seem to the court, tends to prove facts from which the jury may deduce a finding of manslaughter, it is error to fail to charge on it." Branch's Criminal Law, Sec. 504, and the collation of authorities supporting the text quoted.

Judge Lattimore, in the Steen case, 225 S. W. 531, made the following statement:

"The causes named in our statute as adequate to reduce a homicide to manslaughter are well understood to be instances, and not limitations."

The appellant and deceased were strangers. The deceased and Violet Douglas were whispering to each other the first time the appellant saw them together, which was the night before the homicide. Shortly afterwards, Violet Douglas told appellant that deceased was going to make her "catch a rabbit." She was obviously afraid of him. Deceased had practically taken appellant's money from him the night before the homicide. Violet Douglas had signified to appellant that it would not be safe for

him to protest or interfere. Appellant knew that Violet Douglas had told deceased that he was her half brother. The next morning—the morning of the homicide—Violet Douglas had told the appellant that Ragsdale "had liked to have killed her" and that she was afraid to ask him for appellant's money. She told appellant that deceased would kill her. Appellant knew that they were living with one another. He knew that deceased claimed her as his woman. He knew that deceased was drinking heavily. Appellant had seen deceased put his pistol in his shirt. The witnesses Ross and McGown had told appellant of their having been run out by deceased with a pistol. Appellant saw that they were frightened. Later deceased had come in saying that Violet Douglas had run away from him. Deceased had told appellant that "the old lady owns one-half interest in this house and I am running her part of it." Appellant was so exercised over the situation that he tried to find an officer. Violet Douglas was so frightened that she begged appellant to lock her up in one of the rooms and again told appellant that deceased was going to kill him. In order to avoid trouble, appellant told her to keep deceased away. Evidently he was apprehensive. The woman left the rooming house. Deceased had already gone. In a short while she and deceased returned. When deceased appeared, appellant asked him to leave, telling him he had no business on the place, that he was drinking, and that appellant was trying to run a respectable house. Deceased, to quote the witness Caldwell, "was drunk; he certainly wasn't the Montie Ragsdale that I knew. I knew Montie Ragsdale pretty well, and he did not act like Montie Ragsdale." Violet Douglas said, "We are going to run this place to suit ourselves." The appellant demanded that they leave. The deceased himself replied, "To hell with you. We will go where we God-damned please." Deceased advanced along the counter. There was only sixteen inches between them, that being the width of the counter. Deceased grabbed for the appellant with his left hand and reached at his shirt with his right, where appellant had seen him put his pistol only a few hours before. Appellant's back was to the wall; he had no means of escape. He fired and killed the deceased, not even knowing his name at the time.

Can it be said that these facts would not produce in a person of ordinary temper that degree of anger, rage, resentment or terror sufficient to render the mind incapable of cool reflection? We think not.

We think there is no question that the evidence raises the issue of manslaughter, and, that being true, the determination

of that issue should pass from the court to the jury under appropriate instructions. Steen v. State, 225 S. W. 531; Branch's Criminal Law, Sec. 504; Lewis v. State, 231 S. W. 113; Washington v. State, 151 S. W. 818.

Bills of exception Nos. 1 and 2 complain of the state being permitted on re-direct examination of the witness Maude Hamilton to prove by her certain facts tending to explain why she and deceased were convicted of the offense of fornication in the city of San Angelo. These bills present no error. The rule is where a witness has been impeached by proof that he had plead guilty and paid a fine for some offense, he is entitled on re-examination to show such explanatory circumstances in connection with the offense to which he plead guilty as would remove the implication of untruthfulness and serve to reinstate him as a witness. Branch's Annotated Penal Code, Sec. 172, page 105.

Some criticism is addressed to the charge in other parts than those discussed and there are other questions raised by bills of exception, but the matter complained of will not likely occur in another trial.

For the error discussed, the judgment is reversed and the cause remanded.        *Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.