## A. D. YOUNGBLOOD v. THE STATE.

No. 15328.   Delivered May 25, 1932.
Reported in 50 S. W. (2d) 315.

The opinion states the case.

*Joseph F. Greathouse,* of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, murder; the punishment, twenty-five years in the penitentiary.

The testimony showed that the appellant and his wife lived in and operated a small hotel in Fort Worth at the time of the homicide, and that the deceased boarded at said hotel. The witness Earl Sanders testified for the state to the effect that on the night of the homicide appellant and his wife engaged in an argument over the fact that appellant's wife wanted to go to a dance, whereupon the deceased appeared and appellant asked him for a match, and deceased replied that he did not have

a match, but would give him a light off his cigarette. The witness testified that appellant said he did not want a light, but he wanted a match, and then asked the deceased if he wanted to "go to fist city," and the deceased replied that he did not want to have any trouble, and appellant then made an attack upon deceased, and there resulted a fist fight, in which the deceased whipped the appellant, inflicting bruises, etc., on his face and body; that after the fight the deceased left and went upstairs to his room, and a few minutes later appellant was seen to get a knife and start towards the room occupied by the deceased, and upon reaching the room appellant walked into same and struck the deceased in the breast with the knife, as a result of which deceased died shortly thereafter.

Appellant offered evidence to the effect that a short time before the cutting of the deceased that deceased was guilty of insulting conduct towards appellant's daughter, and on the same night, shortly before the stabbing of the deceased, deceased had made an improper proposal to appellant's wife, and on the night of the homicide, when appellant came home, he found the deceased in a room with his wife, and, upon inquiry by appellant as to what was going on, the deceased replied that appellant had found him in the room with his wife and asked the appellant what he was going to do about it; that they had some words and appellant asked deceased to leave his place, and a few minutes before the stabbing of the deceased by appellant the deceased had knocked the appellant down on the floor and kicked him and told him not to get up or he would kill him; that appellant's wife tried to pull deceased away from her husband, and deceased threw her over against the door, and when she again took hold of him and asked him not to strike her husband any more, he struck her and knocked her over against the heating stove; that, by reason of the assault of the deceased on the appellant, the appellant was bleeding about his face and nose, and, while appellant and his wife were in the kitchen washing the blood off of appellant's face, the deceased came in and remarked: "That blood don't amount to anything; it might be worse than that before daylight; this thing ain't over."

Appellant testified that after he was struck by deceased he didn't remember exactly what occurred; that the reason he went upstairs after he was beaten by the deceased was because his wife asked him to tell the deceased to leave the house; that he got the knife with which deceased was stabbed because he was afraid of the deceased; that he acted in self-defense in stabbing the deceased.

Article 1257c, Vernon's Annotated Penal Code, reads as follows: "In all cases tried under the provisions of this Act, it shall be the duty of the court, where the facts present the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence

of a sudden passion arising from an adequate cause, by which is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, *and in appropriate terms in the charge to apply the law to the facts as developed from the evidence."* (Italics ours).

The court complied with the requirement of the foregoing statute, except as to that we have italicized. Appellant timely and properly objected to the failure of the court to, in appropriate terms, apply the provisions of the statute to the evidence raising the issue that appellant acted under the immediate influence of a sudden passion, etc., at the time he struck the fatal blow. Unless the instruction to the effect that the punishment could not exceed five years in the event the jury had a reasonable doubt as to whether appellant acted upon malice aforethought when he struck the fatal blow should be deemed to meet the demand of the statute that the court must, in appropriate terms, apply the law to the facts, a reversal must follow. Prior to the enactment of the statute in question it was held by this court in numerous decisions that an instruction defining malice aforethought and advising the jury, in substance, that the punishment could not exceed five years, unless the jury believed beyond a reasonable doubt that the accused acted upon malice aforethought, met the demand of the law. Following these decisions the Legislature expressly provided that, where the facts present the issue of murder without malice the law applicable thereto, as set out in article 1257c, supra, should be applied to the facts raising the issue. The charge in the present case would have been adequate prior to the enactment of article 1257c, supra. To hold that it is sufficient since the enactment of said statute would be to abrogate the express provisions thereof; for, if the present statute should be given the construction that the state contends for in this case, the Legislature did a useless thing when they enacted it. It is clear and unambiguous in its terms, showing the intention of the Legislature to require a more extended charge on the subject of murder without malice than was required by this court in construing the law before it was amended. The appellant's evidence clearly raised the issue of murder without malice, and, giving effect to the intention of the law-making body, we are constrained to hold that, in failing to make any application of the law to the facts, as required by said statute, the learned trial judge fell into error. In connection with the definition of murder without malice, the court should have in some appropriate language told the jury, in substance, that, if they believed from the evidence that, at the time accused killed deceased, if he did, that accused was laboring under the immediate influence of sudden passion, such as anger, rage, resentment or terror, which rendered his mind incapable of cool reflection, and that such condition of mind was brought about by circumstances or con-

ditions which would have commonly produced such state of mind in a person of ordinary temper, or if they entertained a reasonable doubt as to whether the killing occurred under such circumstances, then, in no event, could they inflict a greater punishment than five years in the penitentiary.

Bills of exceptions Nos. 2 and 3 complain of the action of the trial court in the admission of certain testimony. These bills of exceptions are in question and answer form and contain remarks of the court and the attorneys and are not accompanied by the certificate of the trial judge showing the necessity therefor in order to elucidate the facts or questions involved, and therefore cannot be considered. Salinas v. State, 113 Texas Crim. Rep., 142, 18 S. W. (2d) 663; Kelly v. State, 112 Texas Crim. Rep., 514, 17 S. W. (2d) 460; Lindley v. State, 112 Texas Crim. Rep., 468, 17 S. W. (2d) 47.

Bill of exception No. 1 complains of the failure of the trial court to grant the continuance asked for. Bill of exception No. 4 complains of certain statements of the district attorney in his argument to the jury and of the court's statements in reply to appellant's objections thereo. Bill of exception No. 5 complains of the court reporter reading from his notes on subjects not inquired about and failing to read the evidence about which the jury had asked. We deem it unnecessary to discuss those bills of exception because the matters complained of are not likely to occur on another trial.

For the error pointed out in the charge of the court, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.