THOMAS JOHN ELSMORE V. THE STATE.

No. 18803.   Delivered April 14, 1937.

The opinion states the case.

*Wm. Tupper* and *W. A. Wright,* both of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the offense of murder with malice, and his punishment was assessed at confinement in the state penitentiary for a term of twenty-five years.

Appellant earnestly contends that the court erred in failing to instruct the jury on the law of murder without malice and in refusing to submit his special requested instruction thereon. If the testimony raised the issue, he was entitled to such an instruction because under the law it is the duty of the court to instruct the jury on the law of every issue fairly raised by the evidence. In order to determine whether the evidence raised such an issue we deem it proper to set out, in substance, the facts proven upon the trial.

The first witness offered by the State was J. W. Wilford, who testified that on the afternoon of the day of the homicide he and several parties were in the appellant's place of business drinking beer; that appellant happened to look across the street and saw the deceased, Bynum Shaw; that he remarked, "There is one of the dirtiest men I ever knew in my life"; that in connection therewith he explained why he called this man dirty; that he related to the parties present how Shaw had come into his place of business one day and kicked a stove; that after some further discussion he became excited and agitated, jumped up, ran behind the bar and came towards the door with a pistol, saying that he was going across the street to kill that man; that the witness disarmed him, but in a very short time he got

excited again, ran to his sleeping room and came out with another pistol saying that he was going across the street to kill that s— o— b—; that again they disarmed him; that when they got ready to leave they gave him the guns and told him to put them in the drawer and leave them there. In a very short time thereafter appellant went across the street with a pistol in each hand and began to shoot the deceased.

M. G. Slaughter testified on behalf of appellant that at noon of the day of the alleged homicide he had lunch with the appellant, at which time appellant told him he was going to leave there; that he was a fool for staying in that town because sooner or later he would get into trouble; that people kept talking about him, cursed and abused him for everything. The witness further testified that prior to the occasion mentioned he had heard Bynum Shaw talking about and cursing appellant. The witness admonished Shaw that he was going to talk himself into trouble; that he was doing wrong. Shaw replied, "There is nothing to that little s— o— b— except wind. I will finish him if he starts anything. I will stomp his guts out."

Arthur James, another witness, testified that at one time he was employed to run the business and relieve appellant; that during said time deceased came into said place of business; that the witness asked him why he would induce people from patronizing that place—to which he replied, that he thought the witness was working for that little s— o— b—; that he wished the witness would stay, but if he did not, he hoped that they would never bring that little bastard back.

Leland Smith testified that in the month of December prior to the 17th day of March he had a conversation with the deceased concerning the appellant in which the deceased said that the town was too small for both of them.

Mr. Mims testified that about the middle of the afternoon before the day on which the homicide occurred he had a conversation with the deceased who said: "Somebody is going to take those guns and shove them down that s— o— b—'s throat," at the same time nodding his head towards appellant's place of business. The witness said to him, "Mr. Elsmore is a friend of mine and I like you, but I don't think anyone is going to take any guns and shove them down his throat; besides I do not like to hear anyone talking about a friend of mine that way on the streets."

Appellant testified in his own behalf that the various threats were communicated to him from time to time; that a Mr. Evans told him to watch himself that Shaw and his nephew were lay-

ing for him. He further testified that on the day of the homicide he had been drinking and was pretty full at the time of the shooting.

If the testimony is sufficient to show that the homicide was committed under the immediate influence of sudden passion arising from an adequate cause, by which is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, then he was entitled to have such issue submitted to the jury by an appropriate instruction from the court. Under the former law of manslaughter, as it existed prior to the adoption of the present law relating to murder, insulting words or gestures, or an assault and battery so slight as to show no intention to inflict pain, or injury to property unaccompanied by violence was not adequate cause. The statute as it existed at that time limited the grounds constituting adequate cause; first, to an assault and battery by the deceased causing pain or bloodshed; second, a serious personal conflict, in which great injury is inflicted by the person killed, etc., but said statutes have been repealed and no statute exists now which specifies the acts of the deceased constituting adequate cause. Hence the question of whether or not adequate cause existed is a matter left entirely to the jury to be determined from all the relevant facts and circumstances proven and if they fairly raise the issue, it should be submitted. It seems that the legislature by repealing the statute intended that insulting words or gestures might be sufficient to constitute adequate cause. Therefore, the reasonable conclusion to be drawn from the repeal of said statute, is that the legislature intended that any cause which would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection is murder without malice. We are of the opinion that articles 1257a and 1257c support the conclusion reached by us. By virtue of article 1257a the State or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed. It is obvious from the statutes herein referred to that when the testimony shows an excited and agitated mind at the time of the killing caused by an act of the

deceased, the accused is entitled to have the matter of whether the killing was committed under the immediate influence of sudden passion arising from an adequate cause submitted to the jury for their determination under an appropriate instruction from the court. We think that the testimony in this case is sufficient to fairly raise that issue and the learned trial court fell into error in declining to instruct the jury on the law of murder without malice.

Appellant also complains because the trial court declined to instruct the jury upon the law of temporary insanity produced by the recent use of ardent spirits in mitigation of the penalty prescribed by statute for the offense for which he was tried. We are of the opinion that the evidence is insufficient to justify such an instruction.

For the error herein discussed the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.