**John LUCKY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 46215.**

Court of Criminal Appeals of Texas.

June 13, 1973.

Charles E. Huebner, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Jack Bodiford, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder with malice aforethought wherein

the jury assessed the punishment at ten (10) years.

At the outset, we shall consider appellant's contention that the trial court erred in failing to charge the jury on the issue of murder without malice at the guilt stage of the trial despite a timely presented written objection and a requested charge.

Aubrey Tarver, who related appellant's wife was his niece, testified that on July 25, 1970, about 6:30 p. m., he was at his home at 2318 Shearn in Houston when he heard a horn blow and his children told him that L. D. Givens (the deceased) was there. He related he went to the car and found Givens behind the wheel and the appellant Lucky seated "on the rider's side," and that Givens asked him to have a drink and produced a whisky bottle. Givens first passed the bottle to the appellant, who declined, and Givens responded with, "F——— you in the a———." At this, Tarver testified that the appellant, who lived around the corner, got out of the car and left, and that he (Tarver) and Givens commenced drinking whisky from the bottle and "shooting the bull." Shortly thereafter, Tarver heard a shot and saw the appellant at the corner. Tarver then retreated to some nearby hedges and watched as the appellant walked up to the car, engaged in a short conversation with Givens, and then shot Givens.

Houston Police Officer David Collier testified he went to the location of the alleged offense on the date in question and recovered a pistol from appellant's wife at 1915 Sawyerdale.

Deputy Sheriff T. J. Carson revealed that in August, 1970, he returned the appellant to Texas from the State of Florida.

The medical examiner testified the cause of death was "a gunshot wound to the left neck into the head," and that, while the wound was not a contact wound, "it was a close wound." He related the deceased was six feet tall and weighed 195 pounds

and that at the time of his death his blood contained 0.267 per cent alcohol.

Barbara Ann Tarver Lucky testified she was the appellant's wife and that on the afternoon in question Givens had come to "our house" about 5 p. m. when she and her husband were in the yard. She related that Givens appeared to be drunk, staggered out of his car, and kept calling her "Ann and looking over and walking toward me, you know," that he was being "familiar" with her, and that the appellant objected, telling Givens to call her "Mrs. Lucky." She then left and went into the house. She revealed she then heard Givens begin to curse "real loud," using words like "m——— f———" and "son-of-a-bitch," stating he wanted the appellant to drink with him, but that he wasn't going to give the appellant the money he owed him. The argument continued for a while but, when she next looked out the window, the deceased's car was gone, and, approximately five minutes later, the appellant came into the house and got a gun; that "he was real, real angry," saying he didn't know why Givens kept bothering him; that her husband had complained earlier in the day that the deceased was "picking on" and harassing him.

On cross-examination, she was impeached, in part, by an earlier statement given to the police in which she disclaimed hearing any argument between the appellant and the deceased.

Later, she testified that she had followed her husband "trying to pull" him back, but that he was "very angry" and she saw him fire the pistol at the corner "either up into the air or down on the ground or something," and then saw him walk up to the car and then heard a shot, that the appellant returned to his house, told her Givens was dead, gave her the gun and said he had "to go now."

Testifying in his own behalf, the 37-year old appellant acknowledged several previous encounters with the law. He related

that on the morning of July 25, 1970, he had seen Givens on Crockett Street and they had discussed the $15.00 Givens owed him and had not repaid, that an argument ensued and Givens told him, "You think you are a smart son-of-a-bitch, don't you," and, "I'll tell you what, something bad might happen to you."[1] Appellant testified he terminated the argument by driving off.

Appellant related that late in the afternoon Givens had come to his house and tried to get "familiar" with his wife, began cursing, etc., and that he got "kind of foggy" but remembered getting his pistol and putting it in his pocket; that he did not leave with Givens as testified to, but that he began "tending to my paint and station wagon" when Givens pulled up to the corner and said, "Come here"; that he (the appellant) approached Givens intending to scare him but Givens reached under the seat, and, thinking he was reaching for a pistol, he (the appellant) shot him; that the reason he killed Givens was because he was "scared of him."

■ We must determine from this evidence whether the court erred in failing to charge on the issue of murder without malice while submitting the issue of murder with malice aforethought to the jury. This is true because the trial court is under no obligation to charge on the law of murder without malice unless the evidence raises the issue. Barrientez v. State, 487 S.W.2d 97 (Tex.Cr.App.1972); Bryant v. State, 482 S.W.2d 270 (Tex.Cr.App.1972); Brown v. State, 475 S.W.2d 938 (Tex.Cr. App.1972); Ortegon v. State, 459 S.W.2d 646 (Tex.Cr.App.1970); Dickson v. State, 463 S.W.2d 20 (Tex.Cr.App.1971).

Article 1257c, Vernon's Ann.P.C., provides as follows:

"In all cases tried under the provisions of this Act it shall be the duty of the Court, where the facts present the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, and in appropriate terms in the charge to apply the law to the facts as developed from the evidence."

In 4 Branch's Ann.P.C., 2d ed., § 2301, p. 658, it is written:

"The question of murder without malice should usually be submitted to the jury in an ordinary murder case. Such submission is of course necessary whenever raised by the evidence. As to whether the issue is raised is a question of law for the court, but its actual existence or determination is solely within the province of the jury. (Citations omitted.)"

In Elsmore v. State, 132 Tex.Cr.R. 261, 104 S.W.2d 493 (1937), this court wrote:

". . . It is obvious from the statutes herein referred to that when the testimony shows an excited and agitated mind at the time of the killing caused by an act of the deceased, the accused is entitled to have the matter of whether the killing was committed under the immediate influence of sudden passion arising from an adequate cause submitted to the jury for their determination under an appropriate instruction from the court. . . ." 104 S.W.2d at 495.

In McGee v. State, 473 S.W.2d 11, 14 (Tex.Cr.App.1971), this court observed that, in most cases where there had been a reversal for failure to charge on murder

---

1. Appellant related that the threats were similar to the one made two weeks earlier when Givens informed him, "You might not live the week out."

without malice, there was evidence of immediate acts of the deceased that enraged the mind of the accused. See Elsmore v. State, supra; Henry v. State, 164 Tex.Cr.R. 433, 300 S.W.2d 79 (1957); Privett v. State, 123 Tex.Cr.R. 86, 57 S.W.2d 1102 (1933); Youngblood v. State, 121 Tex.Cr.R. 465, 50 S.W.2d 315 (1932).

In the instant case, appellant's wife testified that the drunken deceased had come to their house, trying to be "familiar" with her in her husband's presence; cursing and engaging her husband in a heated argument, and that, when she saw her husband some five minutes later, he was "real, real angry" complaining about the deceased's harassment of him, and when he left with the pistol just prior to the shooting he was "very angry."

■ Further, keeping in mind that an accused's own testimony is sufficient to raise the issue of murder without malice,[2] we note that he testified that he had earlier been threatened by the deceased, that the deceased came to his home, tried to get "familiar" with his wife, cursed, engaged him in an argument, and that he got "kind of foggy," and that, though he later shot the deceased when he thought the deceased was reaching for a pistol, he did kill him because he was "scared of him."

■ This testimony certainly meets the test of the majority in McGee v. State, supra, that there must be testimony as to a specific event or events which occurred at the time of the killing and which constituted an "adequate cause" from which a "sudden passion" might arise in a person of ordinary temper sufficient to render the mind incapable of cool reflection and influence the accused to commit murder.

For the error in the charge discussed, the judgment is reversed and the cause remanded.

---

1. Tebo v. State, 133 Tex.Cr.R. 61, 106 S.W.2d 712 (1937); McGee v. State, supra.