**Anthony Edward LEE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 47027.**

Court of Criminal Appeals of Texas.

Jan. 23, 1974.

Rehearing Denied Feb. 13, 1974.

---

John R. Coe (Court appointed on appeal only), Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, and Tom Henderson, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder with malice aforethought wherein the punishment was assessed at eighteen (18) years.

In his sole ground of error appellant contends the trial court erred in failing to charge the jury on the issue of murder without malice at the guilt stage of the trial despite a timely presented special requested charge.

The State's evidence reflects that the thirty-one year old appellant, the nineteen year old deceased, Marshall "Weird" Williams, Anthony Hughes and Ralston Harvey all worked at the Maxim Egg Company in Houston and frequently rode to work together. On October 23, 1971, the four men left their place of employment about 2 p. m., purchased some Scotch and went to Charlie's Food Market at 2200 McGowen in Harris County, where they drank Scotch and some beer. They were joined by one Johnny O'Banner and during the course of the conversation they all agreed to "go out" that night.

State's evidence also reflects that appellant and the deceased, who was quite a "kidder," had been joking at work and later at Charlie's, but State's witnesses testified this was not unusual, and there was no heated argument. They did hear the deceased Williams tell the appellant his trousers looked like women's pants, but they heard no remarks concerning appellant's wife.

During the course of the afternoon, Williams left to use the telephone in front of the store to call his brother. About this time Ralston Harvey left to walk home to change his clothes and the appellant followed him, and as the two approached another store, the appellant asked Harvey if the such store sold knives. When Harvey answered in the affirmative, he also inquired why the appellant wanted a knife and the appellant replied that he wanted a knife so he could kill the deceased because he was tired of the deceased "jiving" and "messing around" with him.

While in the Thrifty Food Market, Harvey saw the appellant purchase a knife and put it in his trousers. Harvey didn't believe the appellant was serious in his threat and he left for home when appellant started his return to Charlie's Food Store.

The State's evidence reflects that when the appellant returned the deceased Williams was still in the phone booth. With knife in hand he told the deceased to come out of the phone booth and repeat what he had said earlier. Williams replied that he wasn't afraid of the appellant, and told him if he couldn't joke, he shouldn't do it. The deceased Williams then left the phone booth and sat on the store steps with Hughes. Shortly thereafter, the appellant ran over and stabbed the deceased in the chest.

The cause of death was shown to be a stab wound in the left chest.

Testifying in his own behalf, appellant acknowledged he stabbed and killed the deceased. He related that at Charlie's the deceased told him only sissies wore crushed velvet and that he must be a sissy. He did not testify that this made him angry, but related that the deceased said, " . . . I was fixing to be a father and I told him he was lying and he said you might not be a father but your wife is going to be a mother. . . . "

Appellant revealed he couldn't understand how the deceased knew and his wife hadn't even told him; that he borrowed a dime to call his wife at his mother-in-law's, but the line was busy. He admitted he followed Harvey and that he purchased a knife, but denied he made the statement he wanted to kill the deceased.

He admitted he returned to Charlie's with the knife in his hand because he wanted to find out why the deceased knew his wife was pregnant. He testified he asked the deceased to come out of the phone booth and repeat what he had said, and that the deceased came out and sat on the steps near Hughes, and that he (appellant) told Hughes to take him home, and that Hughes kept drinking beer.

The record then reflects:

"Q All right, then what happened?

"A Well, I turned away and was fixing to go and walk on and at that time I saw Marshall (deceased) get up and I turned back around and met him with the knife."

Appellant related that he did not intend to kill the deceased.

We must determine from the evidence whether the trial court erred in failing to respond to appellant's special requested charge requesting the submission of the issue of murder without malice to the jury. This is true because the trial court is under no obligation to charge on the law of murder without malice unless the evidence raises the issue. Lucky v. State, 495 S.W.2d 919, 921 (Tex.Cr.App. 1973) and cases there cited.

Article 1257c, Vernon's Ann.P.C., provides as follows:

"In all cases tried under the provisions of this Act it shall be the duty of the Court, where the facts present the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, and in appropriate terms in the charge to apply the law to the facts as developed from the evidence."

In 4 Branch's Ann.P.C., 2d ed., Sec. 2301, p. 658, it is written:

"The question of murder without malice should usually be submitted to the jury in an ordinary murder case. Such submission is of course necessary whenever raised by the evidence. As to whether the issue is raised is a question of law for the court, but its actual existence or determination is solely within the province of the jury. (Citations omitted.)"

In Elsmore v. State, 132 Tex.Cr.R. 261, 104 S.W.2d 493 (1937), this court wrote:

" . . . It is obvious from the statutes herein referred to that when the testimony shows an excited and agitated mind at the time of the killing caused by an act of the deceased, the accused is entitled to have the matter of whether the killing was committed under the immediate influence of sudden passion arising from an adequate cause submitted to the jury for their determination under an appropriate instruction from the court. . . . " 104 S.W.2d at 495.

In McGee v. State, 473 S.W.2d 11, 14 (Tex.Cr.App.1971), this court observed that, in most cases where there had been a reversal for failure to charge on murder without malice, there was evidence of immediate acts of the deceased that enraged the mind of the accused. See Elsmore v. State, supra; Henry v. State, 164 Tex.Cr. R. 433, 300 S.W.2d 79 (1957); Privett v. State, 123 Tex.Cr.R. 86, 57 S.W.2d 1102 (1933); Youngblood v. State, 121 Tex.Cr. R. 465, 50 S.W.2d 315 (1932).

 In the instant case, if we understand appellant's brief, appellant does not contend the issue of murder without malice was raised by the State's evidence, but by his own testimony.[1] We agree that the issue was not raised by the State's evidence.

However, appellant did not testify to any specific event or events which occurred *at the time of the killing* and which constituted an "adequate cause" from which a "sudden passion" might arise in a person of ordinary temper and influence the appellant to commit a voluntary homicide without justification or excuse. See McGee v. State, 473 S.W.2d 11 (Tex.Cr.App.1971).

Even according to appellant's version, some time elapsed after the deceased's statement about the condition of appellant's wife before he left to attempt to call his wife. Thereafter, he went to another store and purchased a knife and returned to ask the deceased to repeat the statement. The deceased did not repeat the statement, but ignored the appellant and went to sit on the steps. It was the appellant who then approached and stabbed the deceased.

Under the evidence presented, the court did not err in failing to submit the requested issue of murder without malice. See and cf. Machado v. State, 494 S.W.2d 859 (Tex.Cr.App.1973); Corbett v. State, 493 S.W.2d 940 (Tex.Cr.App.1973); Garza v. State, 479 S.W.2d 294 (Tex.Cr.App.1972).

The judgment is affirmed.

1. An accused's own testimony may be sufficient to raise the issue of murder without malice. Tebo v. State, 133 Tex.Cr.R. 61, 106 S.W.2d 712 (1937); McGee v. State, 473 S.W.2d 11 (Tex.Cr.App.1971); Lucky v. State, supra.