**Chris Roy RAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48895.**

Court of Criminal Appeals of Texas.

Nov. 13, 1974.

Rehearing Denied Dec. 4, 1974.

Raymon Jordan, Houston, for appellant.

Carol S. Vance, Dist. Atty., and James C. Brough, Asst. Dist. Atty., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

JACKSON, Commissioner.

The conviction was for assault with intent to murder with malice aforethought; the punishment, assessed by the jury, twelve (12) years.

Appellant was employed as a welder at a Houston manufacturing plant engaged in the business of building packaging machines. On the morning of April 19, 1972, a confrontation occurred between appellant and his immediate supervisor, Harold Hudson, concerning a ten cents an hour pay raise that appellant felt was due him. During the confrontation, appellant grabbed a pistol from a utility table and fired three shots, one of which struck Harold Hudson in the back. Hudson would have died from the wound if he had not received immediate medical treatment.

In his first ground of error, appellant contends that the trial court erred in refusing to grant appellant's requested charge on assault with intent to murder without malice. We agree.

At the guilt stage of the trial, appellant took the witness stand to testify in his own behalf. A summary of his testimony is as follows. Appellant had spent several days absent from work because of illness. On Wednesday, April 19, 1972, appellant returned to his job at the plant. Around 9:00 A.M., Hudson approached appellant and asked where he had been. Before walking over to appellant, Hudson picked up a piece of metal about twenty inches in length. An argument began when appellant demanded to know what had happened to his raise. Appellant then testified as follows:

"A  I asked him why didn't I get a raise and he said 'You don't due one."

"Q  Did you say anything to him?

"A  I didn't say anything to him right then again. He said, 'You don't due a damn raise."

"Q  What did you say?

"A  At that time I told him 'Fuck you.' And at that time when I told him that, he had this piece of iron in his hand and when he made an attempt to hit me—well, I blocked the lick and he hit me on the arm and I was standing by the table at that time.

"Q  The table next to the saw?

"A  Right.

"Q  And what did you do?

"A  Well, there was a pistol in a little old box like with the blue prints in it, and I reached and got it.

"Q  What did you do with it?

"A  When I blocked the lick we was in a scuffle, and I went to shooting and I don't know what happened at that time.

"Q  The reason you grabbed that gun—

"A  I was scared and I was trying to protect myself. I don't know how many times I shot or if I hit him then.

"Q  Was it your intention to try to kill him?

"A  No, sir. When he fell I could have, but I didn't.

"Q  The only reason you shot him was because he attacked you with this iron?

"A  Yes, sir.

"Q  Did he say anything to you before he struck you?

"A  He said, 'You black son-of-a-bitch you, I'll knock the damn hell out of you.'

"Q  That's when he struck you?

"A  Uh-huh.

"Q  You shot him right there in that area?

"A  Yeah, right in that area. We was right in a scuffle like.

"Q  After you left there, what did you do?

"A Went to the police station in my car and told them what happened."

Appellant explained the presence of the pistol. He had brought it to work several days before with an intention of cleaning it. He placed it in a file box on the utility table and forgot about it when he left work that day. Waymon Kesee, a fellow employee at the plant, testified that employees often brought guns to work at the plant in order to clean and fix them.

On cross-examination, appellant denied having struck Hudson at any time during the confrontation and testified as follows:

"Q When he came over to you with this bar, was he mad at you?

"A No, he wasn't mad.

"Q How did he hold it?

"A He was spinning it around in his hand, you know, just talking.

"Q But he hit you with that?

"A Yes, he did.

"Q Hit you hard?

"A Well, I blocked it. I got a hard lick on my arm but I didn't get hit on my head.

"Q You got a scar from that?

"A It was on there. You can't see a little of it now.

"Q Did it cut the skin?

"A Busted it like.

"Q Sir?

"A. Busted the skin, you know.

"Q Did you get some medical attention?

"A No, I didn't."

Harold Hudson testified that when he saw appellant, he walked over to him and inquired as to his health. When appellant asked him why he had not received a raise, Hudson tried to explain the reasons. Appellant then exclaimed, "I'm going to knock the Hell out of you!" Appellant struck Hudson in the head with his fist causing Hudson to fall to the floor. When Hudson picked himself up, he saw the pistol in appellant's hand and turned and ran. He heard three shots and found himself on the ground. Hudson denied that he had argued with appellant, that he had called appellant a "black son-of-a-bitch and that he had ever hit appellant with an iron bar or otherwise."

Donald Stelley, a sheet metal worker at the plant, testified that he saw Hudson approach appellant. Though Stelley could not hear their conversation, from the expressions on their faces he thought that they were arguing. He stated he saw appellant strike Hudson on the side of the head with his hand. Hudson fell back off-balance a little bit, and when he regained his balance, he began running from appellant. Stelley saw appellant fire one shot aimed at the ceiling. He stated that appellant then took a couple of steps and leveled the gun at the fleeing Hudson and fired, shooting the supervisor in the back. Stelley testified that during the confrontation Hudson had held nothing in his hands and did not strike appellant.

Appellant requested and received a special instruction on self-defense, but his special requested instruction on assault with intent to murder without malice was denied. Appellant preserved the error by filing a written objection to the court's charge which the court overruled.

Article 1160, Vernon's Ann.P.C., provides:

"If any person shall assault another with intent to murder, he shall be confined in the penitentiary for not less than two (2) nor more than twenty-five (25) years, provided that if the jury finds that the assault was committed without malice, the penalty assessed shall be not less than one nor more than three (3) years confinement in the penitentiary

"Sec. 2. Upon the trial of any person for assault with intent to murder, the Court, in its charge to the jury, shall define malice aforethought and in a proper case murder without malice, and instruct the jury touching the application of the law to the facts."

Article 1257c, V.A.P.C., provides:

"In all cases tried under the provisions of this Act it shall be the duty of the Court, where the facts present the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, and in appropriate terms in the charge to apply the law to the facts as developed from the evidence."

■ The testimony of the defendant alone is sufficient to raise the issue and, once it is raised, the court, without determining the weight or the truth or falsity of the testimony is bound to submit the issue for jury determination. Lee v. State, Tex.Cr.App., 504 S.W.2d 504; Monroe v. State, Tex.Cr.App., 501 S.W.2d 639; McGee v. State, Tex.Cr.App., 473 S.W.2d 11; Lewis v. State, 89 Tex.Cr.R. 345, 231 S.W. 113. Where the issue of murder without malice is raised by the evidence, the fact that the evidence also raises the issue of self-defense and the accused is granted a requested instruction on the same does not deprive the accused of his right to an instruction on murder without malice. Monroe v. State, Tex.Cr.App., 501 S.W.2d 639; Lewis v. State, 89 Tex.Cr.R. 345, 231 S.W. 113.

■ Here appellant testified that insulting words were exchanged between appellant and Hudson. Hudson committed an assault and battery upon appellant by striking him with a metal bar, inflicting an injury to appellant's arm when the blow was blocked. There was a scuffle. Appellant was scared. The appellant's testimony was evidence that the shooting of Hudson was the immediate result of "sudden passion," an excited and agitated state of mind. Elsmore v. State, 132 Tex.Cr.R. 261, 104 S.W.2d 493; Bryant v. State, Tex.Cr.App., 482 S.W.2d 270. His testimony also evidenced an immediate act of the injured party that caused the appellant's agitated state of mind and provoked the shooting. Lee v. State, Tex.Cr.App., 504 S.W.2d 504; McGee v. State, Tex. Cr.App., 473 S.W.2d 11. We are unable to say that Hudson's acts, as evidenced by appellant's testimony, were not adequate cause for appellant's "sudden passion" as a matter of law. The issue was one of fact for the jury's determination. Elsmore v. State, 132 Tex.Cr.R. 261, 104 S.W.2d 493.

The failure of the court to instruct the jury on the issue of assault with intent to murder without malice was reversible error.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

MORRISON, Judge (dissenting).

The appellant testified that he did not intend to kill the complainant, and the court charged the jury on the law of aggravated assault (and self defense). Having denied a basic element of assault with intent to kill with or without malice, appellant is in no position to complain for the failure of the court to charge on the law of murder without malice. The court gave appellant all he was entitled to under his testimony.

Under the authority of Bryant v. State, Tex.Cr.App., 482 S.W.2d 270, I dissent to a reversal of this conviction.